

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

David E. Moore
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone

February 20, 2023

**VIA ELECTRONIC-FILING**

The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

    Re:    *The Nielsen Company (US), LLC v. TVision Insights, Inc.*,
              C.A. No. 22-1345-CJB

Dear Judge Burke:

    Pursuant to FED. R. CIV. P. 12(f), Plaintiff The Nielsen Company (US) LLC ("Nielsen") respectfully asks the Court to strike defendant TVision Insights, Inc.'s ("TVision") Sixth Affirmative Defense, which asserts inequitable conduct in the procurement of the '243 patent-in-suit. (D.I. 21 at 13-16.) A copy of TVision's pleading (Amended Answer to Complaint for Patent Infringement) is attached as Exhibit A.[1]

    As the Federal Circuit has lamented, "[t]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Therasense, Inc. v. Becton, Dickenson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) (quoting *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988)). In an effort to curtail that "plague," the Federal Circuit has held that an inequitable conduct defense or counterclaim must plead that (a) ***a particular identified individual*** associated with the prosecution of a patent application (b) failed to disclose ***material, non-cumulative information*** to the U.S. Patent and Trademark Office ("PTO") (c) ***with a specific intent to deceive*** the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3, 1329-30 (Fed. Cir. 2009). TVision's pleading fails to satisfy *Exergen*'s requirements.

### TVision's Failure to Identify a Particular Individual

    First, TVision's inequitable conduct pleading fails to satisfy *Exergen*'s requirement to name a ***specific individual*** who allegedly committed inequitable conduct. In this regard, TVision's pleading is almost identical to the stricken pleading in *Exergen*. Specifically, the *Exergen* pleading accused "Exergen, its agents and/or attorneys" of inequitable conduct. *Exergen*, 575 F.3d at 1328-

---

[1] TVision first asserted an inequitable conduct defense in its original Answer. Nielsen identified several deficiencies in TVision's pleading of that defense, and the parties met and conferred. Subsequently, in an attempt to remedy those deficiencies, TVision filed its Amended Answer. But as explained below, the Amended Answer still has several deficiencies, as TVision lacks any basis to plead inequitable conduct. The Court should not allow TVision to amend again.

The Honorable Christopher J. Burke
February 20, 2023
Page 2

29.   Similarly, here, TVision repeatedly accuses "[inventor] Christen Nielsen, Nielsen's prosecution counsel, **and/or** Nielsen's in-house intellectual property counsel…." (D. I. 21 at 14, 16, 21, 30, 31 (emphasis added).)  To make things even worse, TVision often prefaces this open-ended list with phrases like "at least" (*id.* at 19, 20, 31) and "such as" (*id.* at 13, 14, 18).  Just as the Federal Circuit struck the *Exergen* pleading, the Court should strike TVision's pleading for failure to name a specific individual.  *See Exergen*, 575 F.3d at 1329.

## **TVision's Deficient Pleading as to Deceptive Intent**

TVision also fails to satisfy *Exergen*'s requirement to plead facts plausibly showing that someone "withheld … information with a ***specific intent to deceive*** the PTO." *Exergen*, 575 F.3d at 1328-29 (emphasis added).  To allege specific intent to deceive the PTO, a party must plead that "[an individual] knew of [a] reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290.  In this context, a "material" prior art reference is a reference that would have caused the PTO to reject the patent claims at issue. *Id.* at 1291.

TVision does not allege that any individual believed "the PTO would not have allowed [the claims] had it been aware of the undisclosed prior art," and, based on that belief, deliberately withheld the prior art to deceive the PTO. *Id.*  Instead, TVision improperly attempts to satisfy the deceptive intent requirement by pointing to uncited prior art references that had common ownership, inventorship, or prosecution counsel with the patent-in-suit.  In TVision's view, the existence of such references – alone – necessarily demonstrates ***specific intent to deceive***.  But as a matter of law, that is not the case.  As the Federal Circuit has made clear, even if bare allegations about the existence of such references could establish that someone knew about the uncited references and considered them material (which they cannot), those allegations do ***not*** satisfy the deceptive intent requirement:

> Proving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive.

*Therasense*, 649 F.3d at 1290 (Fed. Cir. 2011) (citing *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("The fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct.")).

This District has applied the Federal Circuit's *Therasense* holding to a pleading very similar to TVision's.  In *Analog Devices, Inc. v. Xilinx, Inc.*, C.A. No. 19-2225-RGA, 2021 WL 466859, at *3 (D. Del. Feb. 9, 2021), the defendant based its inequitable conduct defense on the fact that the named inventor of the patent-in-suit failed to cite a reference that he had previously authored.  Striking the defense, the court quoted *Therasense*, repeating the Federal Circuit's admonition that specific intent cannot be adequately pleaded by alleging that "the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO." *Id.* (quoting *Therasense*, 649 F.3d at 1290).  Like TVision's pleading, which relies on common ownership, inventorship, and prosecution counsel, the defendant's argument in *Analog Devices* was "predicated entirely on [the inventor's] knowledge of the omitted document." *Id.*  Such an argument, this Court held, "is inadequate as a matter of law." *Id.*

The Honorable Christopher J. Burke
February 20, 2023
Page 3

TVision also attempts to bolster its pleading of specific intent by pointing out that Nielsen did not assert the four independent claims (claims 1, 9, 16, and 22) against TVision in this action. (D.I. 21 at 19.) This, TVision unreasonably concludes, indicates that Nielsen must have "known" the independent claims were invalid. But as the Federal Circuit has held, for a finding of inequitable conduct, "specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense*, 649 F.3d at 1290 (quoting *Star*, 537 F.3d at 1366). Indeed, "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91 (citations omitted). Here, a much more reasonable inference that can (and should) be drawn is that because several dependent claims are infringed, Nielsen declined to assert valid independent claims to avoid the unnecessary expense of *proving* their validity. Accordingly, "intent to deceive cannot be found." *Id.* (citations omitted).

Even more unreasonable is TVision's assertion that Nielsen used "Track One" examination priority to "minimize the Examiner's opportunity to locate and thoroughly evaluate the withheld references and information…." (D.I. 21 at 32.) This fact-free charge demonstrates a complete misunderstanding of Track One, which does *not* result in the Examiner's spending less time on an application. To the contrary, it simply results in the Examiner's handling the application out of turn. (*See* 37 C.F.R. § 1.102.)

Finally, TVision attempts to tease deceptive intent out of Nielsen having actually *cited* references that TVision deems irrelevant. (D.I. 21 at 31-32.) But as the Federal Circuit observed in *Therasense*, "[w]ith inequitable conduct casting the shadow of a hangman's noose, it is unsurprising that patent prosecutors regularly bury PTO examiners with a deluge of prior art references, most of which have marginal value." 649 F.3d at 1289. Quoting this *Therasense* language, the Middle District of Florida struck an inequitable conduct defense that was based on the very same argument TVision makes here: "[I]t is likely that a patentee provides copious references to the PTO in order to ensure that he is not subject to inequitable conduct charges for failing to disclose a reference, not as an act of deliberate deception."[2] *ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1318 (M.D. Fla. 2013) (quoting *Therasense*, 649 F.3d at 1289).

### Conclusion

In *Therasense*, the Federal Circuit articulated the need to tighten the standards for inequitable conduct "in order to redirect a doctrine that has been overused to the detriment of the public." 649 F.3d at 1290. Such overuse is clearly present here. Therefore, Nielsen's motion to strike TVision's inequitable conduct defense should be granted.

Respectfully,

*/s/ David E. Moore*

David E. Moore

---

[2] TVision makes much of the fact that among the references cited by Nielsen were patents in the same "family" that it says were not prior art. (D.I. 21 at 32.) But those references were *required to be cited* so that the examiner could consider whether double-patenting rejections might be appropriate. *See, e.g.*, *In re Lonardo*, 119 F.3d 960, 965 (Fed. Cir. 1997).

The Honorable Christopher J. Burke
February 20, 2023
Page 4

DEM:nmt/10647506/14944-00004

Enclosure
cc:    Clerk of the Court (via hand delivery)
       Counsel of Record (via electronic mail)