

Andrew E. Russell
I.M. Pei Building
1105 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 298-0704
arussell@shawkeller.com

March 3, 2023

**BY CM/ECF & HAND DELIVERY**
The Honorable Christopher J. Burke
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801-3556

  Re: *The Nielsen Company (US), LLC v. TVision Insights, Inc.*, C.A. No. 22-1345-CJB

Dear Judge Burke:

  TVision Insights, Inc. ("TVision") respectfully opposes The Nielsen Company (US) LLC's ("Nielsen's") Rule 12(f) motion to strike (D.I. 29, 30).  TVision's Amended Answer pleads over 19 pages of detailed factual allegations supporting its inequitable conduct defense, including the who, what, when, where, and how of Nielsen's conduct.  (D.I. 21 ("Am. Answer") at 13-33.)

  Nielsen attacks TVision's inequitable conduct defense on two grounds: (1) a purported failure to "identify a particular individual"; and (2) purported "deficient pleading as to deceptive intent."  (D.I. 30 ("Br.") at 1-2.)  Both of Nielsen's arguments are based on cherry-picked or inaccurate characterizations of TVision's allegations, and ignore the more than adequate factual support alleged by TVision.  Nielsen's motion should be denied.

  **<u>Identifying a Particular Individual</u>**: Nielsen first argues that TVision "fails to . . . name a ***specific individual*** who allegedly committed inequitable conduct."  (Br. at 1.)  But TVision did not generically accuse "[Nielsen], its agents and/or attorneys," as Nielsen suggests.  (*Id.* at 1-2.) TVision specifically identified **Christen Nielsen** (the '243 patent's named inventor), **James A. Flight** (an attorney at Hanley, Flight & Zimmerman, LLC responsible for prosecuting the '243 patent), and in-house intellectual property counsel at Nielsen with responsibility for its patent portfolio related to audience measurement systems, such as **Thomas Strouse** (Nielsen's Vice President & Intellectual Property Counsel), as the individuals who it alleges engaged in inequitable conduct.  (Am. Answer at 13, 18-19, 28-30.)

  Identifying individuals by name, as TVision does, satisfies the "who" of pleading inequitable conduct.  *See Allergan USA, Inc. v. Prollenium US Inc.*, No. 19-126-CFC-SRF, 2019 WL 7298569, at *5 (D. Del. Dec. 30, 2019) ("The counterclaim identifies Dr. Lebreton by name as the 'who' of the misrepresentations. . . . This allegation satisfies the requirement . . . ."), *report and recommendation adopted*, 2020 WL 409634 (D. Del. Jan. 24, 2020); *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-cv-0642-ADA, 2022 WL 3593132, at *6 (W.D. Tex. Aug. 22, 2022) (identifying inventor and prosecuting attorney by name "sufficiently plead[s] the 'who' element for [a] claim of inequitable conduct"); *Diebold Nixdorf, Inc. v. Hyosung Tns, Inc.*, No. 19-1695-LPS, 2021 WL 861734, at *3 (D. Del. Mar. 4, 2021) ("list[ing] a group of inventors by name" found sufficient). Nielsen cites no contrary authority suggesting that identifying individuals by name is insufficient.

SHAW KELLER LLP

The Honorable Christopher J. Burke
Page 2

Nielsen complains that TVision's allegations use the phrases "such as," "at least," and "and/or," but fails to explain how this affects TVision's otherwise adequate pleading.[1]  This is a proper form of pleading, as TVision has alleged the remaining elements of inequitable conduct as to each individual.  *See* FED. R. CIV. P. 8(d)(2) ("A party may set out 2 or more statements of a . . . defense alternatively or hypothetically, either in a single . . . defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

To the extent Nielsen's complaints are directed to the allegations regarding "in-house intellectual property counsel," TVision offered specific allegations allowing a reasonable inference that Nielsen employs such an individual and that it is Thomas Strouse, including:

- "[T]here was a high degree of coordination between the prosecution of the '243 patent and the filing of the complaint in this case, as reflected by the fact that the '243 patent issued just one day before the 21-page complaint in this case was filed, which was accompanied by [over 300 pages of materials]";

- "[I]t was not possible for Nielsen's outside litigation counsel at Kelley, Drye & Warren LLP who filed the complaint in this case to have conducted a reasonable pre-filing investigation . . . in the less than 24 hours between issuance of the '243 patent and the filing of the complaint," and therefore "Nielsen's outside litigation counsel . . . must have begun working on the complaint . . . during the time that the '243 patent was still undergoing prosecution";

- "Nielsen's outside litigation counsel did not coordinate directly with . . . prosecution counsel at Hanley, Flight & Zimmerman, LLC because such coordination would have violated protective order provisions . . . and because Nielsen's outside litigation counsel has represented that they were not involved in the prosecution of the '243 patent"; and

- "Accordingly, Nielsen must have had in-house intellectual property counsel who coordinated between . . . litigation counsel at Kelley, Drye & Warren, LLP and outside prosecution counsel at Hanley, Flight & Zimmerman, LLC and must have known the key information known to each set of lawyers and must have approved of the decisions made and activities undertaken[.]"

(Am. Answer at 17-18.)  TVision also alleged that Mr. Strouse "signed the power of attorney associated with the initial application," (*id.* at 18-19), which allows a reasonable inference that he is the in-house counsel at Nielsen responsible for this application.  In short, TVision's detailed factual allegations more than adequately plead the "who" of inequitable conduct.  The Court should reject Nielsen's unsupported argument to the contrary.

**Intent to Deceive**: Nielsen also argues that TVision "fails to . . . plausibly show[] that

---

[1] *Exergen*, the only case Nielsen cites regarding the "who" of inequitable conduct, did not address this issue.  Instead, the *Exergen* pleading was inadequate because it "fail[ed] to name the specific individual associated with . . . filing or prosecution . . . who [allegedly] both knew of the material information and deliberately withheld or misrepresented it."  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1329 (Fed. Cir. 2009).

someone 'withheld . . . information with a specific intent to deceive the PTO.'" (Br. at 2.) In doing so, Nielsen misapplies Federal Circuit precedent, ignores large swaths of TVision's pleading, and inaccurately characterizes the few allegations it actually discusses.

"[I]n order to adequately plead the intent prong of an inequitable conduct defense. . . , the [defendant] need only allege facts from which the Court could reasonably infer that the patent applicant made a deliberate decision to deceive the PTO." *Wyeth Holdings Corp. v. Sandoz, Inc.*, Civ. A. No. 09-955-LPS-CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012), *report and recommendation adopted*, 2012 WL 749378 (D. Del. Mar. 1, 2012). TVision has more than satisfied this standard.

Unlike a typical inequitable conduct defense based only on withholding specific prior art references, TVision has alleged that the "invention" in the independent claims of the '243 patent is a basic audience measurement platform that was extremely well-known within Nielsen, as evidenced by multiple Nielsen references, well over a decade before the 2011 priority date of the '243 patent, including by Christen Nielsen, James A. Flight, and Nielsen's in-house counsel. This basic platform was so well known, in fact, that nearly all of the elements of the independent claims were detailed in a 1992 article in *The Atlantic*, "Watching Americans Watch TV," which explains—based on interviews of Nielsen executives—how Nielsen has used this audience measurement platform for decades to measure the viewing habits of home audiences. (Am. Answer at 14-15.) TVision alleges, for example, that:

- Christen Nielsen, James A. Flight, and Nielsen's in-house counsel "were well aware when Nielsen applied for the '243 patent that the technology claimed in at least the independent claims . . . was a basic, well-known platform . . . that was at least 10 years older than the December 2011 priority date claimed by the '243 patent";

- "[T]he article in *The Atlantic* disclosed an 'audience measurement system' . . . called the passive meter" that "sits next to an audience member's television," the "entire point" of which was "to determine who is watching a particular show," and that the system "'scans the room every two minutes' to obtain a 'fresh image,'" "analyze[s] a sequence of images in the media exposure environment to detect a head," "determines a head orientation" in order to only count those individuals actually watching the TV, "determined audience identification information based on the match of a head to a known person associated with the media exposure environment," and "must have obtained content-identifying data corresponding to the media content presented by the TV";

- The only feature of the independent claims not disclosed in the *The Atlantic* article was "using an audio signature of the [TV's] media content to identify that content," but that this feature "was already described—indeed, *patented*—by Nielsen almost 40 years ago in Nielsen's U.S. Patent No. 4,677,466, which issued in June 1987 and was applied for in July 1985."

(*Id.*) Beyond the **pervasive** knowledge of the basic audience measurement platform (including in prior patent applications authored by Christen Nielsen and known to Flight), which is alone sufficient for a reasonable inference of intent, TVision has also alleged a unique set of facts that allow—indeed, compel—an inference that these individuals knew during prosecution that the

SHAW KELLER LLP

The Honorable Christopher J. Burke
Page 4

independent claims of the '243 patent were invalid, which strongly suggests a deceptive intent in their dealings with the Patent Office.  For example, TVision alleged:

- "Despite going to the effort and expense of filing a new continuation application that included these independent claims . . . , the very next day after the patent issued . . . Nielsen filed this litigation, asserting the newly issued '243 patent, but . . . elected to assert only significantly narrower dependent claims that depend from these independent claims."; and

- "[T]he only reason to assert these dependent claims against TVision but not the corresponding independent claims (which would necessarily make for an easier showing when attempting to prove infringement) is that Nielsen['s] in-house intellectual property counsel and its outside prosecution counsel at Hanley, Flight & Zimmerman [were] aware that [they] are invalid."

(*Id.* at 19-20.)  While litigation counsel's choice of which patent claims to assert may not normally be probative of patent prosecution counsel's intent, TVision's alleged facts, as described above, allow a reasonable inference of significant pre-complaint coordination between the two sets of counsel, such that Nielsen's prosecution counsel must have "shared th[e] belief and assessment [of invalidity] because of the obvious, high degree of coordination between litigation and prosecution counsel via in-house intellectual property counsel." (*Id.* at 28-29.)  TVision also alleged that, given the nature of the prior art identified during prosecution, these individuals "decided to withhold the material information and prior art known to them," "selectively disclosed only certain, potentially less relevant prior art," and "submit[ted] a number of references that were not prior art in order to . . . misdirect the Examiner," all of which further shows intent to deceive.  (*Id.* at 19, 32.)  Taken together, TVision's allegations are sufficient to allow a reasonable inference of deceptive intent. Nielsen's motion largely ignores the totality of TVision's factually specific allegations bearing on intent, which cannot all be recounted here, given page constraints.

Nielsen also fundamentally misapplies Federal Circuit precedent when it repeatedly argues that TVision has not adequately pled intent to deceive because such intent is not the most reasonable inference from the facts alleged.  As this Court and *Exergen* itself recognized, the "single most reasonable inference" test that Nielsen relies on is ***not*** a pleading standard; it is a standard of proof for the merits.[2]  *See, e.g.*, *Wyeth*, 2012 WL 600715, at *7 ("[T]he 'single most reasonable inference' requirement is an evidentiary standard that must be satisfied at the proof stage, not a pleading standard."), *report and recommendation adopted*, 2012 WL 749378 (D. Del. Mar. 1, 2012); *Exergen*, 575 F.3d at 1329 n.5.  For example, Nielsen claims, for example that deceptive intent cannot be found in the fact that it chose not to assert any of the independent claims of the '243 patent in this case because there is a "much more reasonable inference that can (and should) be drawn"—namely, that Nielsen did so "to avoid the unnecessary expense of ***proving*** their validity."  (Br. at 3 (emphasis in original).)  This ironic suggestion borders on an admission that Nielsen knew the independent claims were invalid.  But it also makes no sense, both because (1) it is ***TVision's*** burden to prove invalidity, not the other way around, 35 U.S.C. § 282(a), and

---

[2] For the same reason, Nielsen's reliance on *ParkerVision, Inc. v. Qualcomm Inc.* (Br. at 3) is unavailing because *ParkerVision* wrongly applied the "single most reasonable inference" test at the pleading stage.  *See* 924 F. Supp. 2d 1314, 1318 (M.D. Fla. 2013).

The Honorable Christopher J. Burke
Page 5

(2) any validity arguments for the independent claims would apply equally to the dependent claims. In any event, none of Nielsen's proposed alternative inferences really matter because the legally relevant question at this stage is whether intent to deceive is a reasonable inference from the facts alleged—which it is—not whether Nielsen can postulate alternative reasonable inferences.[3] *Wyeth*, 2012 WL 600715, at *7.

Nielsen's remaining arguments also lack merit. Contrary to Nielsen's assertion, *Analog Devices, Inc. v. Xilinx, Inc.*, did not involve a "pleading very similar to TVision's." (Br. at 2.) Intent to deceive in *Analog Devices* was "predicated entirely on [the named inventor's] knowledge of the omitted document." 2021 WL 466859, at *3. Here, by contrast, TVision has alleged a unique set of facts that, as described above, goes far beyond mere knowledge of the withheld references. Nor does TVision contend that "the existence of [the withheld] references—***alone***— necessarily demonstrates specific intent to deceive," as Nielsen claims. (Br. at 2 (emphasis added).) Instead, TVision relies on the totality of its allegations to show deceptive intent. *See Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("Intent . . . may be inferred from the totality of the evidence."). Nielsen is also wrong in claiming that "TVision does not allege that any individual . . . deliberately withheld the prior art to deceive the PTO." (Br. at 2.) To the contrary, TVision explicitly alleged that each identified individual was aware that the withheld references were material to patentability—for example: "Rather than citing the above prior art references and information ***known to them to be material to patentability***, Christen Nielsen, prosecution counsel at Hanley, Flight & Zimmerman, and/or Nielsen's in-house intellectual property counsel decided to submit a number of references that were not prior art in order to . . . give the appearance of fulfilling their duty of disclosure and misdirect the Examiner, which further shows intent to deceive." (Am. Answer at 31-32 (emphasis added).)

In short, TVision has more than adequately alleged facts allowing a reasonable inference of deceptive intent. Nielsen's arguments to the contrary should be rejected.

---

[3] Nevertheless, Nielsen's other suggested inferences don't hold water either. For instance, Nielsen's claim that it was "required" to cite numerous irrelevant, non-prior-art familial patents "so that the examiner could consider . . . double-patenting rejections" (Br. at 3 n.2) is incorrect. After the 1994 Uruguay Round of GATT, patents in the same family—like those Nielsen claims it was "required" to identify during prosecution—no longer serve as double-patenting references because their 20-year statutory patent terms end on the same date. *See Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1217-18 (Fed. Cir. 2014) (explaining that because GATT changed patent terms from 17 years from patent issuance to 20 years from the earliest priority date, the statutory terms of patents in the same family expire on the same date). Nielsen's cited authority, *In re Lonardo*, 119 F.3d 960 (Fed. Cir. 1997), is irrelevant as it deals with the pre-GATT regime, under which double-patenting rejections were routinely based on patents in the same family.

SHAW KELLER LLP

The Honorable Christopher J. Burke
Page 6

Respectfully submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)

cc:    Clerk of Court (by CM/ECF & Hand Delivery)
       All Counsel of Record (by CM/ECF & Email)