**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 22-1345-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPENING BRIEF
<u>IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM</u>**

OF COUNSEL:

Steven Yovits
Constantine Koutsoubas
Melvin Gaddy
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

Clifford Katz
Jolie Brett Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

Dated:  November 21, 2023
11173919 / 14944.00004

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company
(US), LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT....................................................................................................1

ALLEGED FACTS ....................................................................................................................2

THE CLAIMS ..........................................................................................................................5

LEGAL STANDARD .................................................................................................................5

ARGUMENT ...........................................................................................................................5

I.      Count I: TVision Has Failed to Allege Any Violation of Section 1 of the Sherman Act .....5

II.     Count II: TVision Has Failed to Plausibly Allege That Nielsen Violated Section 2 of the
        Sherman Act Through Monopolization ...................................................................8

        A.      TVision Fails to Allege Monopoly Power ............................................................9

        B.      TVision Fails to Allege Any Improper Exclusionary Conduct ..............................11

                1.      TVision Fails to Allege the "Anti-Commingling" Provisions Foreclosed
                        Competition from a Significant Portion of Any Market, and Therefore,
                        Those Provisions Do Not Constitute Exclusionary Conduct....................11

                2.      TVision Fails to Plead That Nielsen's Enforcement of the '243 Patent Has
                        Excluded Competition from a Relevant Market, and Thus, Such Activity
                        Does Not Constitute Exclusionary Conduct Under Section 2 ..................12

                3.      TVision's Allegation that Nielsen's Subsidiary Refused to Deal with It Is
                        Not an Allegation of Exclusionary Conduct .............................................12

                4.      TVision Fails to Allege Any Facts That Plausibly Show Nielsen's
                        Litigation Was a Sham and That TVision Suffered Any Cognizable
                        Damage, and Thus, TVision's Sham Litigation Allegations Are Not
                        Allegations of Improper Exclusionary Conduct .......................................14

III.    Count III: TVision Has Failed to Plausibly Allege That Nielsen Violated Section 2 of the
        Sherman Act by Attempted Monopolization....................................................................16

IV.     Count IV: TVision Has Failed to Plead a Plausible Claim for Tortious Interference of
        Contract or Deliberate Interference with a Prospective Business Opportunity and Lacks
        Standing to Allege Either .............................................................................................17

V.      Count V: TVision Has Failed to Plead That Nielsen Was Unjustly Enriched...................18

VI.     Dismissal with Prejudice is Appropriate.......................................................................19

CONCLUSION.........................................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AlphaCard Sys. LLC v. Fery LLC*,
 No. 19-20110, 2023 WL 3506414 (D.N.J. May 17, 2023) ......................................................7

*Alvarado v. Skelton*,
 No. 3:16-3030, 2017 WL 11675640 (M.D. Tenn. July 6, 2017) ...........................................20

*Arnold Chevrolet LLC v. Tribune Co.*,
 418 F. Supp. 2d 172 (E.D.N.Y. 2006) ..................................................................................13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................5, 8, 15, 17

*Bhole, Inc. v. Shore Invs., Inc.*,
 67 A.3d 444 (Del. 2013) .........................................................................................................17

*Boring v. Google, Inc.*,
 362 F. App'x 273 (3d Cir. 2010) ...........................................................................................19

*Broadcom Corp. v. Qualcomm Inc.*,
 501 F.3d 297 (3d Cir. 2007) ..................................................................................................16

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
 509 U.S. 209 (1993) ...............................................................................................................16

*Brown Shoe Co. v. United States*,
 370 U.S. 294 (1962) ..........................................................................................................9, 10

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*,
 239 F. Supp. 2d 550 (E.D. Pa. 2002) ....................................................................................16

*Christy Sports, LLC v. Deer Valley Resort Co.*,
 555 F.3d 1188 (10th Cir. 2009) .............................................................................................16

*DeBonaventura v. Nationwide Mut. Ins.*,
 428 A.2d 1151 (Del. 1981) .....................................................................................................18

*Duke Univ., Allergan, Inc. v. Akorn, Inc.*,
 No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284 (D.N.J. Sept. 16, 2019) ........................15

ii

*E.I. Du Pont de Nemours & Co. v. Monsanto Co.*,
  C.A. No. 00-359-SLR, 2001 WL 652019 (D. Del. Feb. 14, 2001)............................................2

*Eastern R.R. Presidents' Conf. v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961).............................................................................................................15

*Eastman v. Quest Diagnostics Inc.*,
  724 F. App'x 556 (9th Cir. 2018) ..........................................................................................7

*Eichorn v. AT&T Corp.*,
  248 F.3d 131 (3d Cir. 2001)..................................................................................................6

*Eisai, Inc. v. Sanofi Aventis U.S., LLC*,
  821 F.3d 394 (3d Cir. 2016).................................................................................................11

*Fed. Trade Comm'n v. AbbVie Inc.*,
  976 F.3d 327 (3d Cir. 2020).................................................................................................14

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
  539 A.2d 1060 (Del. 1988) ..................................................................................................19

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
  658 F.2d 129 (3d Cir. 1981)..................................................................................................6

*FTC v. Facebook, Inc.*,
  560 F. Supp. 3d 1 (D.D.C. 2021) ..........................................................................................10

*In re Google Digital Advert. Antitrust Litig.*,
  No. 20-CV-03556-BLF, 2021 WL 2021990 (N.D. Cal. May 13, 2021) ...............................10

*H.J., Inc. v. Int'l Tel. & Tel. Corp.*,
  867 F.2d 1531 (8th Cir. 1989) .............................................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)..................................................................................................8

*Int'l Constr. Prods. LLC v. Caterpillar Inc.*,
  C.A. No. 15-108-RGA, 2016 WL 264909 (D. Del. Jan. 21, 2016) ...............................7, 10

*Itiowe v. U.S. Gov't*,
  553 F. App'x 271 (3d Cir. 2014) ..........................................................................................18

*Jersey Asparagus Farms, Inc. v. Rutgers Univ.*,
  803 F. Supp. 2d 295 (D.N.J. 2011) .......................................................................................10

*LePage's Inc. v. 3M*,
  324 F.3d 141 (3d Cir. 2003)............................................................................................11, 16

*In re Old BPSUSH, Inc. v. Barsa*,
   C.A. No. 20-1450-MN, 2021 WL 4453595 (D. Del. Sept. 29, 2021) ....................................17

*Otsuka Pharm. Co.. v. Torrent Pharms. Ltd., Inc.*,
   187 F. Supp. 3d 483 (D.N.J. 2016) ........................................................................................15

*Parker v. Learn Skills Corp.*,
   530 F. Supp. 2d 661 (D. Del. 2008)...............................................................................12, 14

*Perrigo Co. v. AbbVie Inc.*,
   No. 21-3026, 2022 WL 2870152 (3d Cir. July 21, 2022).......................................................14

*Perry v. NYSARC, Inc.*,
   424 F. App'x 23 (2d Cir. 2011) ..........................................................................................5, 8

*PR Acquisitions, LLC v. Midland Funding LLC*,
   C.A. No. 2017-0465-TMR, 2018 WL 2041521 (Del. Ch. Apr. 30, 2018) ............................19

*Queen City Pizza v. Domino's Pizza*,
   124 F.3d 430 (3d Cir. 1997).................................................................................................10

*RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*,
   338 F. Supp. 2d 1208 (D. Colo. 2004)..................................................................................13

*Sandoz, Inc. v. United Therapeutics Corp.*,
   No. 2:19-cv-10170, 2022 WL 17335696 (D.N.J. Mar. 30, 2022) ............................................7

*Standard Oil Co. of N.J. v. United States*,
   221 U.S. 1 (1911).............................................................................................................5-6

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
   No. 13-MD-2445, 2017 WL 4642285 (E.D. Pa. Oct. 17, 2017)............................................13

*Synthes, Inc. v. Emerge Med., Inc.*,
   No. 11-1566, 2012 WL 4473228 (E.D. Pa. Sep. 28, 2012) .....................................................9

*Talley v. Christiana Care Health Sys.*,
   C.A. No. 17-926-CJB, 2018 WL 4938566 (D. Del. Oct. 11, 2018) ......................................10

*Tampa Elec. Co v. Nashville Coal Co.*,
   365 U.S. 320 (1961)............................................................................................................11

*United States v. Colgate & Co.*,
   250 U.S. 300 (1919)..............................................................................................................6

*United States v. Dentsply Int'l, Inc.*,
   399 F.3d 181 (3d Cir. 2005)................................................................................................11

iv

*United States v. E. I. Du Pont De Nemours & Co.*,
  118 F. Supp. 41 (D. Del. 1953), *aff'd*, 351 U.S. 377 (1956) ...................................................12

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956).................................................................................................................10

*United States v. Grinnell Corp.*,
  384 U.S. 563 (1966)...................................................................................................................9

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2003)...............................................................................................................6, 9

*ZF Meritor, LLC v. Eaton Corp.*,
  696 F.3d 254 (3d Cir. 2012)...................................................................................................6, 7

**Statutes**

Sherman Act, 15 U.S.C. § 1, *et seq.*......................................................................... *passim*

**Other Authorities**

FED TRADE COMM'N, *Monopolization Defined*, https://www.ftc.gov/advice-
  guidance/competition-guidance/guide-antitrust-laws/single-firm-
  conduct/monopolization-defined (last visited Nov. 9, 2023)...................................................9

Federal Rule of Civil Procedure 12(b)(1) ............................................................................1, 18

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 5, 19

D. Del. LR 7.1.3(a)(7).................................................................................................................9

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiff The Nielsen Company (US), LLC ("Nielsen"), moves to dismiss Defendant TVision Insights, Inc.'s ("TVision") Counterclaim ("Counterclaim") alleging that Nielsen has restrained trade and monopolized markets in violation of Sections 1 and 2 of the Sherman Act, tortiously interfered with TVision's contractual relations and business prospects, and unjustly enriched itself at TVision's expense.

## PRELIMINARY STATEMENT

TVision's Counterclaim seeks to characterize a business dispute between two companies as a threat to competition in unspecified markets for the collection and sale of information. But nothing in the Counterclaim alleges how Nielsen's actions threaten competition in any relevant market. No facts are alleged that qualify as a restraint of trade as a matter of law. Moreover, the Counterclaim is bereft of allegations about the size of markets, the nature and number of competitors, the volumes of commerce, or the state of competition. Accordingly, the Court should dismiss the Counterclaim with prejudice.

To the extent TVision's Answer and Counterclaim conveys any information at all, the allegations either contradict one another or advance unsupported legal conclusions. In particular, TVision:

1) Alleges that Nielsen has a monopoly in audience measurement data, but contradicts that allegation by denying that Nielsen is the media industry's leading audience measurement data and analytics company;

2) Alleges that Nielsen prevents its customers from dealing with TVision, but contradicts that allegation by admitting that those same customers can and do buy from TVision;

3) Alleges that a Nielsen subsidiary refused to supply its technology services to TVision in order to prevent TVision from selling products to Nielsen's competitors, but contradicts that claim by alleging that another supplier promptly enabled TVision to continue selling its products to those same Nielsen competitors;

4)  Claims that Nielsen's litigation to enforce its patents is "objectively baseless" without asserting any facts to support any element of a sham litigation claim;

5)  Claims Nielsen tortiously interfered with the contracts of TVision's customers (and its customers' customers) without identifying any contract provisions (or even any contract) that has been breached; and

6)  Claims unjust enrichment, but alleges no injustice and no enrichment.

Even in the light most favorable to TVision, none of its claims state a plausible cause of action upon which relief can be granted. This case is about TVision's own unfair competition in the marketplace through its infringement of Nielsen's patent rights. The Counterclaim transparently and baselessly attempts to shift that focus by asking this Court to speculate and intervene to help TVision obtain the advantage it cannot lawfully achieve itself. All the counts should be dismissed.

## ALLEGED FACTS

Nielsen and TVision sell data, services, and systems that measure media audiences. As alleged by TVision,[1] "media" includes broadcast radio and television, as well as "stored audio and video content, which is either played back from stored media, or streamed from the Internet." D.I. 68 at 33–73 ("Counterclaim") ¶¶ 10–12, 18. TVision alleges that Nielsen is ***not*** the media industry's leading data and analytics company (D.I. 68, 1–33 ("TVision's Answer") ¶ 7); in fact, TVision acknowledges that Nielsen has multiple competitors—some identified, and some not (*see id.* ¶¶ 81, 120).

TVision alleges three or four relevant markets, but does not describe any of their boundaries or attempt to allege what products are supposedly excluded from which markets. One (or perhaps two) of the alleged markets "comprises (a) data obtained from media audience measurement

---

[1] TVision's allegations are described as pled in order to present them in the light most favorable to TVision. *See E.I. Du Pont de Nemours & Co. v. Monsanto Co.,* No. 00-359-SLR, 2001 WL 652019, at * 1 (D. Del. Feb. 14, 2001).

systems to provide 'ratings' or other measurements to approximate the number of people watching a television program or other media, or watching advertisements; *and/or* (b) the sale or license of such data to advertisers and/or media providers, such as television networks, television stations, radio stations, streaming services, or the like." Counterclaim ¶ 6 (emphasis added). TVision also alleges—without any elaboration—that there are two "relevant product *and/or* service submarkets." *See id.* ¶ 7 (emphasis added). Those are "(a) audience measurement systems for obtaining exposure data for a media exposure environment, including devices equipped with software to perform such measurements and collect data; and (b) the submarket for data collected by audience measurement systems." *Id.*

The Counterclaim contains virtually no information about these markets and submarkets. It fails to identify competitors or customers, products or services, or prices or quantities. Only one company's place in a market is described: Nielsen's, which TVision inexplicably alleges is a "100% monopoly" that (in contradiction) also faces competition from TVision's customers and those customers' customers. *Id.* ¶¶ 28, 81, 82.[2] Moreover, TVision acknowledges that there are other competitors who "will be made known after further opportunity for investigation and/or discovery." *Id.* ¶ 81. TVision provides no clues as to who is the media industry's leading data and analytics company, other than to *deny* that the leader is (alleged monopolist) Nielsen. *See* TVision's Answer ¶ 7.

Nielsen allegedly attained whatever position it occupies in media audience measurement markets via a "plethora of predatory and anticompetitive behavior." Counterclaim ¶ 88. Stripped of hyperbole, the behavior boils down to three activities (none of which, as explained below, can support any count of the Counterclaim):

---

[2] TVision even lists two of Nielsen's competitors by name: VideoAmp and iSpot. *See id.* ¶ 120.

(1)      <u>Refusal to license.</u> Nielsen acquired Gracenote, a company that once licensed its automatic content recognition ("ACR") technology to TVision. *See* Counterclaim ¶¶ 24–25. At some point after the acquisition, Gracenote declined to renew TVision's license (*see id.* ¶ 77), whereupon TVision turned to another company, ACRCloud, for the technology. Securing services from another supplier, as TVision did, amounts to nothing but a typical competitive business activity. *See id.* ¶ 25.

(2)      <u>Data use restrictions.</u> According to the Counterclaim, Nielsen enters contracts "prohibiting [its] customers from using data generated by TVision as an additional source of data." Counterclaim ¶ 26. TVision then contradicts this categorical claim by alleging that (a) Nielsen's customers *can* use TVision's data as long as they do not commingle that data with Nielsen's data without paying an additional fee (*id.* ¶ 28); (b) Nielsen's customers *can* purchase TVision's data and *can* commingle it with Nielsen data if they pay a fee (*id.*); and (c) Nielsen has been "[u]nable to prevent TVision from supplying data to Nielsen's competitors" (*id.* ¶ 29).

(3)      <u>Nielsen's enforcement of its patents against TVision.</u> Nielsen has instituted three legal actions against TVision for infringing U.S. Patent Nos. 9,020,189 ("the '189 Patent"); 8,302,120 ("the '120 Patent"); 7,783,889 ("the '889 Patent"); and 11,470,243 ("the '243 Patent"). *See* Counterclaim ¶ 94. TVision alleges that Nielsen's actions are sham lawsuits because they are "objectively baseless." *Id.* ¶ 95–96.[3] But nowhere does TVision allege that the rights conferred by any of these patents constitute relevant markets or are essential to competing in them. Nor does TVision allege that the litigation itself affects its ability to compete.

---

[3] TVision implies that Nielsen dismissed the lawsuit based on the '189 and '120 Patents because that lawsuit was objectively baseless, but makes no allegation in support of that characterization. Patentees can and do have any number of legitimate reasons not to pursue cases, and TVision has never sought any remedy for defending an allegedly sham litigation.

**THE CLAIMS**

TVision states five deficient claims against Nielsen. Count I asserts that a refusal to license TVision and the alleged "anti-commingling" terms between Nielsen and its customers are agreements in restraint of trade in violation Section 1 of the Sherman Act. Count II asserts that the alleged refusal to license, the anti-commingling terms, and Nielsen's enforcement of its patents violate Section 2 of the Sherman Act. Count III asserts all of these actions constitute an attempted monopolization claim. Count IV asserts that alleged anti-commingling terms in Nielsen contracts have caused certain customers of VideoAmp and iSpot (themselves customers of TVision) to cease dealing with VideoAmp and iSpot and that these downstream decisions constitute tortious interference with TVision's contractual relations. Count V asserts that these activities have unjustly enriched Nielsen. Each of these counts should be dismissed.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough facts to allow the Court to "reasonabl[y] infer[] that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "armed with nothing more" than "labels and conclusions" falls short. *Id.* at 678–79. Furthermore, a complaint that pleads facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). And allegations "that are contradicted by the complaint itself" are not plausible. *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011).

**ARGUMENT**

**I.**      <u>**Count I**</u>**: TVision Has Failed to Allege Any Violation of Section 1 of the Sherman Act**

Section 1 of the Sherman Act prohibits contracts, combinations, and conspiracies in restraint of trade. *See* 15 U.S.C. § 1. A century of precedent has interpreted the Act to reach only restraints that "unreasonably" restrain trade. *See Standard Oil Co. of N.J. v. United States*, 221

U.S. 1, 58 (1911). An "unreasonable" restraint is defined by a practice that imposes anticompetitive costs that outweigh procompetitive benefits in a properly defined market. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012). Other than a bald, unsupported statement that Nielsen's actions prevent TVision from dealing with its customers, TVision's Counterclaim does not allege **any** restraint of trade, let alone an unreasonable one. Accordingly, Count I should be dismissed.

Although far from clear (or sufficient), the **only** allegation that could be interpreted as an effort to plead restraint of trade to satisfy the requirements of Count 1 is arguably TVision's allegation that Nielsen charges customers for the right to commingle Nielsen's data with other data. This allegation fails to satisfy TVision's pleading obligation for at least the following reasons.

**First**, merely charging customers a fee for certain uses or limited rights (i.e., commingling) is, as a matter of law, not restraint of trade. *See Fleer Corp. v. Topps Chewing Gum, Inc.*, 658 F.2d 129, 147–48 (3d Cir. 1981) (citing *Standard Oil*, 221 U.S. at 60). Courts do not recognize sales and purchases as restraints of trade on the grounds that the price charged is allegedly excessive. *Cf. Standard Oil*, 221 U.S. at 59–60. Accordingly, setting a price for a sale of rights, no matter how high the price may be, is not a restraint of trade. Indeed, courts have repeatedly rejected claims that the antitrust laws impose a duty on one party to charge a particular price or offer a certain service to another party.[4] *See, e.g.*, *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408–10 (2003); *United States v. Colgate & Co.*, 250 U.S. 300, 304–05 (1919).

---

[4] Setting prices for the sale of rights is the essence of commercial decisions in competitive markets, which the antitrust laws are intended to protect, and courts hold that such practices are not "unreasonable." *See Standard Oil*, 221 U.S. at 59–60; *Eichorn v. AT&T Corp.*, 248 F.3d 131, 148 (3d Cir. 2001) ("The antitrust laws were not designed to protect every uncompetitive activity, but rather only those activities that have anti-competitive effects on the market as a whole.").

***Second***, to be "unreasonable," a restraint must foreclose enough of a market to threaten competition in it, and allegations of harm only to a competitor—and not competitors across the market or a "substantial share" of the market—are entirely deficient. *See, e.g.*, *ZF Meritor*, 696 F.3d at 271 ("The legality of an exclusive dealing arrangement depends on whether it will foreclose competition *in such a substantial share of the relevant market* so as to adversely affect competition." (emphasis added)); *AlphaCard Sys. LLC v. Fery LLC*, No. 19-20110, 2023 WL 3506414, at *4 (D.N.J. May 17, 2023) (concluding that plaintiff only alleged injury to itself and, thus, failed to state a claim for restraint of trade); *Sandoz, Inc. v. United Therapeutics Corp.*, No. 2:19-cv-10170, 2022 WL 17335696, at *13 (D.N.J. Mar. 30, 2022) (stating that the plaintiff must show a "substantial foreclosure of the market," "'rather than merely disadvantage rivals'" (quoting *Eisai, Inc. v. Sanofi Aventis U.S., LLC*, 821 F.3d 394, 403 (3d Cir. 2016))).

To plead that a "substantial share" of the market has been foreclosed, TVision must actually allege that a ***particular market*** has been foreclosed from competition and other important facts, such as the size of that market. *See Int'l Constr. Prods. LLC v. Caterpillar Inc*., C.A. No. 15-108-RGA, 2016 WL 264909, at *5–6 (D. Del. Jan. 21, 2016) (dismissing complaint because it "fail[ed] to demonstrate that the Manufacturer Defendants' exclusive dealing arrangements amount[ed] to substantial foreclosure in any alleged market at all"); *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 558–59 (9th Cir. 2018) (finding that the plaintiff failed to allege the size of the market at issue, the share of the market foreclosed, or the share of the market maintained and holding that the "Plaintiffs ultimately did not allege a sufficient factual basis from which it is possible to infer that any particular portion of the [relevant] market was foreclosed as a result of exclusive dealing"). Here, there are no allegations supporting that any market—much less a "substantial portion" of a

market—has been foreclosed from competition.[5] Moreover, TVision fails to allege the size of any market, the share of any market foreclosed, any market share maintained, or any effects on that market. Indeed, TVision does not even plead that there is a single competitor foreclosed from its purported markets, and there are no allegations regarding how charging different prices for different uses of data excludes anyone except those who do not want to pay. The only thing TVision pleads is that it can and does actually sell its product to customers and has not been foreclosed even with these purported "anti-commingling" terms in place.[6]

*Third*, TVision's Count I allegations are internally inconsistent. TVision acknowledges that Nielsen's customers can and do pay it for uses such as commingling. *See* Counterclaim ¶ 28. This admission contradicts any assertion that Nielsen's purported contracts prohibit TVision from dealing with TVision's customers. Thus, even assuming TVision's "anti-commingling" allegation satisfies TVision's burden to plead restraint of trade (it does not), that allegation is contradicted by other allegations in the Counterclaim, rendering it implausible. *See Perry*, 424 F. App'x at 25.

Because no formulation of the allegations in Count 1 amounts to a restraint of trade as a matter of law and because TVision has failed to allege any necessary facts about the market that Nielsen is purportedly foreclosing, TVision has failed to allege a Sherman Act Section 1 claim. Count I should be dismissed.

## II.   <u>Count II:</u> TVision Has Failed to Plausibly Allege That Nielsen Violated Section 2 of the Sherman Act Through Monopolization

To establish a violation of Section 2 due to monopolization, a plaintiff must plausibly plead

---

[5] TVision fails to specify what market is the subject of its claim, describing no less than two markets and two submarkets.

[6] While TVision has alleged "on information and belief" that Nielsen's restrictive clauses are "likely to preclude competition in a substantial share of the market" (Counterclaim ¶ 82), these allegations are "mere conclusions," which cannot be credited for purposes of this Motion. *See Twombly*, 550 U.S. at 556; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 319 (3d Cir. 2010).

that the defendant (1) possesses monopoly power in the relevant market and (2) has acquired, enhanced, or maintained that power by the use of exclusionary conduct "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Verizon*, 540 U.S. at 407; *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). TVision has failed to allege either of these elements, and thus, the Court should dismiss Count II.

### A.      TVision Fails to Allege Monopoly Power

TVision makes the conclusory allegation that Nielsen possesses monopoly power, but it fails to satisfy its obligation to allege facts supporting that allegation. *See Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228, at *10 (E.D. Pa. Sep. 28, 2012). And again, TVision's allegations are internally inconsistent. On the one hand, TVision broadly proclaims in conclusory fashion that Nielsen possesses monopoly power, but on the other, denies that Nielsen is the leading data and analytics company in the media industry, which necessarily implies that Nielsen has less than a 50% market share. *See* TVision's Answer ¶ 7. Shares of less than half a market indicate ***lack of*** market power. *See* Fed Trade Comm'n, *Monopolization Defined*, https://www.ftc.gov/advice-guidance/competition-guidance/guide-antitrust-laws/single-firm-conduct/monopolization-defined (last visited Nov. 9, 2023) (noting that courts "typically do not find monopoly power if the firm . . . has less than 50 percent of the sales of a particular product or service within a certain geographic area").[7]

Moreover, nowhere in the Counterclaim's allegations is there an explanation of where and how monopoly power might exist. TVision's proffered market descriptions do not mention market boundaries, substitutes, or interchangeability (as they are required to do). *See Brown Shoe Co. v.*

---

[7] While not an unreported opinion, the FTC's *Monopolization Defined* is not available through the National Reporter system, WESTLAW, or LEXIS, and thus, pursuant to Local Rule 7.1.3(a)(7), the cited document may be found attached as **Exhibit A**.

*United States*, 370 U.S. 294, 325 (1962) ("The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."); *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 436 (3d Cir. 1997). Instead, the Counterclaim merely lists a few products and services and declares they are markets:

- "data obtained from media audience measurement systems to provide 'ratings' or other measurements" of people watching media or advertising (Counterclaim ¶ 6);

- "the sale or license of such data to advertisers and/or media providers" (*id.*);

- systems for collecting "exposure data for media exposure environment[s]" (*id.* ¶ 7); and

- data collected by those systems (*see id.*).

But these allegations are entirely insufficient to support a monopolization claim, as nothing is alleged about the size of these markets; which and how many companies are in them (other than Nielsen, TVision, and TVision's customers); shares of the relevant markets; conditions of entry; firms on the verge of entry; or products that are substitutes for those listed. *See, e.g.*, *In re Google Digital Advert. Antitrust Litig.*, No. 20-CV-03556-BLF, 2021 WL 2021990, at *3 (N.D. Cal. May 13, 2021); *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 4 (D.D.C. 2021); *Jersey Asparagus Farms, Inc. v. Rutgers Univ.*, 803 F. Supp. 2d 295, 313 (D.N.J. 2011) ("A plaintiff must allege cross-elasticity of consumer demand because 'the outer boundaries of a relevant market are determined by reasonable interchangeability of use.'"); *Talley v. Christiana Care Health Sys.*, C.A. No. 17-926-CJB, 2018 WL 4938566, at *7–9 (D. Del. Oct. 11, 2018).

TVision's failure to plausibly plead that Nielsen has monopoly power in a properly defined relevant market is fatal to all claims under Sherman Act Section 2. *See Caterpillar, Inc.*, 2016 WL 264909, at *5, 7. Count II should be dismissed.

**B.     TVision Fails to Allege Any Improper Exclusionary Conduct**

Even if TVision had properly defined a market and Nielsen's position in it (it did not), the Counterclaim would still fail because it does not identify any exclusionary conduct that could support a claim for violation of Sherman Act Section 2. *See Eisai, Inc.*, 821 F.3d at 402–03. TVision pleads that the following actions can support such claim: (a) Nielsen's alleged anti-commingling provisions, (b) Nielsen's enforcement of the '243 patent, (c) Nielsen's subsidiary's refusal to continue supplying the Gracenote Entourage product to TVision, and (d) Nielsen's enforcement of patents other than the '243 patent. TVision is wrong.

**1.     TVision Fails to Allege the "Anti-Commingling" Provisions Foreclosed Competition from a Significant Portion of Any Market, and Therefore, Those Provisions Do Not Constitute Exclusionary Conduct**

TVision alleges that the purported anti-commingling provisions of Nielsen's contracts with its customers constitute exclusionary conduct that supports a Section 2 claim. But this allegation fails for two reasons. First, as discussed above, TVision contradicts this allegation elsewhere in its Counterclaim by ***admitting*** that the alleged anti-commingling provisions do not exclude anyone. Second, TVision's allegations fail to specify harm to a substantial portion of ***any*** relevant market.

Concerning the second of these two reasons, Section 2 requires "that competition, not merely competitors" be harmed by some allegedly exclusionary activity. *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005). Accordingly, a practice does not amount to exclusionary conduct subject to the Sherman Act unless the practice forecloses a substantial portion of the market and confers monopoly power. *See Tampa Elec. Co v. Nashville Coal Co.*, 365 U.S. 320, 327–28 (1961); *LePage's Inc. v. 3M*, 324 F.3d 141, 157 (3d Cir. 2003); *Dentsply*, 399 F.3d at 191 (stating that the test under Section 2 is "whether the challenged practices bar a substantial number of rivals or severely restrict the market's ambit." (citations omitted)).

As explained above in Part I, TVision has not pled that it, or any of its competitors, have

been foreclosed from any market by Nielsen's alleged anti-commingling provisions. Nor could it—TVision continues to sell to the customers that have agreed to those terms. *See id.* ¶ 28. Thus, TVision's assertions about Nielsen's alleged anti-commingling restrictions do not sufficiently state a Sherman Act Section 2 claim.

> ### 2. TVision Fails to Plead That Nielsen's Enforcement of the '243 Patent Has Excluded Competition from a Relevant Market, and Thus, Such Activity Does Not Constitute Exclusionary Conduct Under Section 2

TVision also points to Nielsen's enforcement of its '243 patent as exclusionary conduct to maintain market power in violation of Section 2. But here again, TVision fails to plead that Nielsen has market power in any relevant market. *See supra* Part II.A. TVision implies that the relevant market includes the art of the '243 Patent, but it has long been recognized that the scope of a patent does not define a relevant market under the antitrust laws. *See, e.g.*, *United States v. E. I. Du Pont De Nemours & Co.*, 118 F. Supp. 41, 214 (D. Del. 1953) (finding patented cellophane products part of flexible wrap market), *aff'd*, 351 U.S. 377 (1956). TVision has not alleged a defined market, any competitors in that market, or any potential alternatives in the market. Thus, TVision cannot allege that Nielsen's enforcement of the '243 Patent is exclusionary conduct that maintains market power.

> ### 3. TVision's Allegation that Nielsen's Subsidiary Refused to Deal with It Is Not an Allegation of Exclusionary Conduct

TVision also alleges, in a wholly conclusory fashion, that Nielsen "caused" its subsidiary Gracenote "to refuse to renew" TVision's license to its ACR services, and that this action is improper exclusionary conduct. *See* Counterclaim ¶¶ 24–25. But Gracenote's conduct may not be imputed to Nielsen because TVision provides no facts to support its conclusory allegation that *Nielsen* "caused" Gracenote's refusal to renew. *See Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 681 (D. Del. 2008) (dismissing tortious interference claim because plaintiff improperly

"allege[d] in a conclusory manner" that defendant's conduct "caused" plaintiff's harm).

Courts have generally held that, in order for antitrust allegations against a subsidiary to be fairly made against the parent company, there must be allegations that the parent company was the alter ego of the subsidiary or actually engaged in anti-competitive conduct—not merely that it served as parent to its wholly owned subsidiary. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2017 WL 4642285, at *7 (E.D. Pa. Oct. 17, 2017) ("A Section 2 claim brought against a parent corporation based on anticompetitive activity occurring at the subsidiary level is sufficient if there are factual allegations showing that the subsidiary is the alter ego of the parent, . . . or showing independent conduct on the part of the parent[.]"); *H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1549 (8th Cir. 1989) (holding that a parent could not be held liable for claims against its subsidiary, including Sherman Act claims, "without proof that it performed acts sufficient to create liability, or actively influenced [the subsidiary] in its violations."); *Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006) (stating that "in the antitrust context, courts have held that absent allegations of anticompetitive conduct by the parent, there is no basis for holding a parent liable for the alleged antitrust violation of its subsidiary."). Moreover, courts have repeatedly found that, where a plaintiff alleges only that a parent wholly owns a subsidiary or generally alleges that the parent company participated in the conspiracy, without providing specific examples, a plaintiff fails to state a claim against the parent for the subsidiary's actions. *See, e.g.*, *Arnold Chevrolet LLC*, 418 F. Supp. 2d at 178; *RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1216 (D. Colo. 2004). Because TVision only generally alleges that Gracenote is Nielsen's subsidiary and provides no facts or examples to support its conclusory allegation that Nielsen "caused" Gracenote's refusal to renew, this allegation fails to support a Section 2 claim.

*Cf. Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 681 (D. Del. 2008) (dismissing tortious interference claim because plaintiff improperly "allege[d] in a conclusory manner" that defendant's conduct "caused" plaintiff's harm).

Ultimately, the fact that TVision concedes it promptly found an alternative to Gracenote and is selling data to Nielsen's competitors contradicts the conclusory allegation that Gracenote refused to license its product "for the purpose of preventing TVision from providing data to Nielsen's competitors in the relevant market." Counterclaim ¶ 78. The antitrust laws do not require one party to deal with another. Accordingly, TVision cannot point to Nielsen's alleged refusal to license as improper exclusionary conduct.

Finally, even if Nielsen were found to be liable for the acts of Gracenote, the conduct about which TVision complains allegedly occurred five or six years ago. An action under the Sherman Act must be brought "within four years after the cause of action accrued." 15 U.S.C. § 15b; *see also Perrigo Co. v. AbbVie Inc.*, No. 21-3026, 2022 WL 2870152, at *4 (3d Cir. July 21, 2022) ("First, in antitrust cases, a cause of action generally 'accrues and the statute [of limitations] begins to run when a defendant commits an act that injures a plaintiff's business.'" (internal citations omitted)). Accordingly, TVision's claims are time-barred based on the express allegations in the Counterclaim, and the Court should disregard TVision's allegations about Gracenote's conduct.

> **4.      TVision Fails to Allege Any Facts That Plausibly Show Nielsen's Litigation Was a Sham and That TVision Suffered Any Cognizable Damage, and Thus, TVision's Sham Litigation Allegations Are Not Allegations of Improper Exclusionary Conduct**

TVision points to Nielsen's alleged "sham" enforcement of its patents as improper exclusionary conduct. To establish sham litigation, a plaintiff must show that the enforcement was "objectively baseless," such that no reasonable petitioner could expect a favorable outcome on the merits. *Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 346 (3d Cir. 2020). A complaint alleging

sham litigation must also allege plausible facts that the plaintiff had no genuine reason to sue and was motivated solely by an improper purpose. *See id.*; *see also Eastern R.R. Presidents' Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961). TVision has made no such allegations.

Nielsen has filed three lawsuits against TVision for violating Nielsen's valid and enforceable patents. TVision calls Nielsen's patent infringement suits "objectively baseless," but it never once alleges any facts that support such a legal conclusion.[8] Legal conclusions unsupported by plausible factual allegations are not sufficient to state a claim under the Supreme Court's *Twombly* standard. *See Duke Univ., Allergan, Inc. v. Akorn, Inc.*, No. 3:18-cv-14035-BRM-TJB, 2019 WL 4410284, at *7 (D.N.J. Sept. 16, 2019) (A "recitation of the elements of a monopolization cause of action . . . alleging . . . [a] lawsuit constitutes a sham . . . [is] insufficient to vitiate the protections of the *Noerr-Pennington* doctrine.").

Even if Nielsen's lawsuits were objectively baseless, bare allegations about them would not support an antitrust cause of action for sham litigation. In particular, TVision is required to allege that there is likely harm to competition, and it must allege facts supporting an improper subjective motive on the part of Nielsen. TVision has failed on both of these prongs. With regard to harm to competition, TVision fails to plead any facts at all. With regard to improper motive, TVision's allegation that Nielsen intended to drive TVision out of business through the expenditure of litigation costs lacks any support. Thus, TVision fails to allege that Nielsen's lawsuits, even if they were a sham, support an action under the Sherman Act.[9]

---

[8] TVision implies Lawsuit I was a sham because Nielsen voluntarily dismissed it. In fact, the patents at issue in that suit were and remain valid and enforceable. If Nielsen's goal were to exclude a competitor through alleged sham litigation, it would not have dismissed any of its lawsuits.

[9] TVision has alleged it has incurred costs defending the litigation (Counterclaim ¶¶ 94–96), but does not allege, as it must, a causal connection between its costs and harm to the market. *See Otsuka Pharm. Co. v. Torrent Pharms. Ltd., Inc.*, 187 F. Supp. 3d 483, 486–87 (D.N.J. 2016).

**III.    Count III: TVision Has Failed to Plausibly Allege That Nielsen Violated Section 2 of the Sherman Act by Attempted Monopolization**

To plead a claim for attempted monopolization, TVision must plead facts that plausibly show "'(1) that [Nielsen] has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (quoting *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993)); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007). TVision has not sufficiently pled any of these elements.

First, TVision has failed to identify a single act or practice that it alleges to be predatory conduct.[10] The allegations TVision does make are nothing more than conclusory repetitions of the grievances TVision alleges as unreasonable restraints—Nielsen's declining to renew TVision's license, the purported anti-commingling terms in Nielsen's licenses, and litigation over Nielsen's patents. None of these acts satisfies the standard of a predatory or anticompetitive practice. *See supra* Part II.B. Second, TVision has failed to plead any facts supporting a specific intent to monopolize. *See Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 572 (E.D. Pa. 2002) ("The specific intent element requires more than a mere intention to prevail over rivals or improve market position."). Third, there are no allegations in the Counterclaim that there is a dangerous probability that a market will be monopolized. *See supra* Part II.B.

Because TVision fails to plausibly plead any of the three required factors of attempted monopolization, the Court should dismiss Count III.

---

[10] Judicial determinations of predatory conduct have been largely limited to cases of discount pricing that would only be rational when a dominant company can drive rivals out of business by charging prices below levels that they can sustain. *See, e.g.*, *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223–24 (1993); *LePage's Inc.*, 324 F.3d at 159–60. TVision alleges no such conduct here.

**IV.  <u>Count IV:</u> TVision Has Failed to Plead a Plausible Claim for Tortious Interference of Contract or Deliberate Interference with a Prospective Business Opportunity and Lacks Standing to Allege Either**

TVision has failed to plead a plausible claim for tortious interference of contract or interference with prospective business advantage. With respect to the first claim, "[u]nder Delaware law, the elements of a claim for tortious interference with a contract are: '(1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury.'" *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013) (internal citations omitted).[11] TVision has not plausibly pled ***any*** of the elements for tortious interference of contract: TVision has failed to allege any specific contract, Nielsen's knowledge of any contract, the breach of any contract, or any unjustified injury caused by a breach. TVision alleges that Nielsen interfered, not with ***TVision's*** contracts, but with the contracts of TVision's customers or TVision's customer's customers. *See* Counterclaim ¶¶ 111–112 ("On information and belief, as a result of Nielsen's change in its agreements, certain customers have either not signed agreements with VideoAmp or iSpot, not renewed agreements with VideoAmp or iSpot, or terminated agreements with VideoAmp or iSpot . . . ."). TVision does not allege that any of those parties somehow breached a contract with TVision, thereby harming TVision.[12]

---

[11] TVision has failed to allege which state's common law applies to its state law claims. Thus, for the purpose of this motion, Nielsen will analyze TVision's claims under Delaware law. Nielsen reserves the right to challenge the choice of law for TVision's state law claims in the future.

[12] Tellingly, TVision pleads this claim "on information and belief." For TVision to plead breaches of contracts to which it is not a party, it must either illicitly have learned of those contracts' confidential terms, or it must simply be guessing as to the contents of those contracts. TVision appears to have chosen the latter route. Such a guess is not sufficient to support TVision's allegations. *See In re Old BPSUSH, Inc. v. Barsa*, C.A. No. 20-1450-MN, 2021 WL 4453595, at *14 (D. Del. Sept. 29, 2021) ("*Twombly* … advises courts to reject conjecture (*i.e.,* speculation) when ruling on a motion to dismiss.").

With respect to the second claim, a "showing of deliberate interference with a prospective business opportunity requires (a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c) proximate causation, and (d) damages, all of which must be considered in light of a defendant's privilege to compete or protect his business interests in a fair and lawful manner." *DeBonaventura v. Nationwide Mut. Ins.*, 428 A.2d 1151, 1153 (Del. 1981). Again, TVision has not alleged ***any*** facts to support these elements.

Specifically, with respect to the prospective business opportunity claim, TVision has not alleged it had a reasonable probability to do business with any customer, has not alleged that Nielsen interfered with a probable TVision opportunity, has not alleged proximate cause, has not alleged any damage, and alleges nothing about the privilege of competition. *See* Counterclaim ¶ 111. To the contrary, TVision's complaint is consistent with Nielsen's privilege to win customers in a competitive marketplace, even when those customers leave TVision or its customers. TVision has pled no factual basis for an intentional interference or reasonable probability of success.

Moreover, TVision does not have standing to complain about alleged tortious interference with a third party's contract. The U.S. Court of Appeals for the Third Circuit has plainly held that "'a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Itiowe v. U.S. Gov't*, 553 F. App'x 271, 272 (3d Cir. 2014) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)). TVision pleads only that Nielsen purportedly interfered with TVision's ***customers'*** rights and the rights of TVision's ***customers' customers***—not TVision's rights. Accordingly, TVision lacks standing to bring these tortious interference claims, and they should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), in addition to Rule 12(b)(6).

## V.    <u>Count V:</u> TVision Has Failed to Plead That Nielsen Was Unjustly Enriched

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention

of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988). "To assert a claim for unjust enrichment, a plaintiff must prove the following elements: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'" *See PR Acquisitions, LLC v. Midland Funding LLC*, C.A. No. 2017-0465-TMR, 2018 WL 2041521, at *14 (Del. Ch. Apr. 30, 2018) (internal citations omitted).[13] "Typically, with an unjust enrichment claim, a 'plaintiff seeks to recover from defendant for a benefit conferred under an unconsummated or void [contract],' and the law then implies a quasi-contract which requires the defendant to compensate the plaintiff for the value of the benefit conferred." *Boring v. Google, Inc.*, 362 F. App'x 273, 281 (3d Cir. 2010) (holding that taking photos without consent is not a "benefit conferred" but rather a claim based in "damages for torts"—thus a claim for unjust enrichment is inapposite). TVision has made no attempt to allege any facts to support any of these necessary elements. Accordingly, under the Third Circuit's *Boring* case, TVision's unjust enrichment claim should be dismissed.

Here, much like *Boring*, no allegations describe an unjust retention of a benefit for Nielsen; a loss to TVision; or any consequence that contravenes principles of justice, equity, or good conscience. To the contrary, Count V describes lawful business activities. And, like *Boring*, this is not a "case[] involving a contract or a quasi-contract," and there is no relationship that gives rise to a valid unjust enrichment claim. *Id.* Because Plaintiffs have wholly failed to plead the allegations necessary to state a claim for unjust enrichment, the Count should be dismissed.

## VI. Dismissal with Prejudice is Appropriate

Dismissal ***with prejudice*** is appropriate because the deadline for amending the pleadings

---

[13] Again, TVision has not alleged which specific state's law applies, and Nielsen reserves the right to challenge the applicable state law, but applies Delaware law for the purpose of this motion.

was October 13, 2023 (D.I. 17)—the day TVision asked the Court for leave to file its Counterclaim (D.I. 67). TVision waited until the last day to amend its pleading at its own peril. *See Alvarado v. Skelton,* No. 3:16-3030, 2017 WL 11675640, at * 1 (M.D. Tenn. July 6, 2017) ("Defendants waited until the last day to file a motion for leave to amend at their own peril that the Court would find the motion insufficient."). This case was filed over a year ago (D.I. 1), and there is no reason TVision could not have included its Counterclaim with its original Answer on December 19, 2022 (D.I. 12). Indeed, the Counterclaim makes clear that TVision's purported cause of action arises entirely from information TVision has known since before the original Answer date. Specifically, TVision's first alleged basis for its Counterclaim is that "Nielsen caused Gracenote to refuse to renew TVision's license to use Gracenote's ACR technology," which allegedly occurred ***in 2018***. Counterclaim ¶ 24. TVision's second alleged basis for its Counterclaim is that "Nielsen has [entered into contracts prohibiting] customers from comingling Nielsen data with TVision data." Counterclaim ¶¶ 26–27. But, as explained above, in light of the Counterclaim's failure to cite any actual contract, this seems to be a guess on TVision's part—a guess it could have made when it filed its original Answer. And TVision's third and final alleged basis for its Counterclaim is that Nielsen has filed suit against TVision to enforce its patents. Counterclaim ¶ 29. Nielsen's lawsuits against TVision, the Counterclaim explains, were filed on November 10, 2021 (Counterclaim ¶ 30), January 14, 2022 (Counterclaim ¶ 31), and October 12, 2022 (Counterclaim ¶ 36). Allowing TVision to re-file its Counterclaim would unduly prejudice Nielsen by introducing substantial delay in this case, which has already been pending for over a year.

## CONCLUSION

For the foregoing reasons, Nielsen respectfully requests that the Court dismiss TVision's Counterclaim with prejudice.

OF COUNSEL:

Steven Yovits
Constantine Koutsoubas
Melvin Gaddy
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel:  (312) 857-7070

Clifford Katz
Jolie Brett Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  (212) 808-7800

Dated: November 21, 2023
11173919 / 14944.00004

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*