**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, ) <br> ) <br> Plaintiff, ) <br> ) C.A. No. 22-57-CJB <br> v. ) <br> ) **JURY TRIAL DEMANDED** <br> TVISION INSIGHTS, INC., ) <br> ) **PUBLIC VERSION** <br> Defendant. ) | |
| THE NIELSEN COMPANY (US), LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) C.A. No. 22-1345-CJB <br> v. ) <br> ) **JURY TRIAL DEMANDED** <br> TVISION INSIGHTS, INC., ) <br> ) **PUBLIC VERSION** <br> Defendant. ) | |

**THE NIELSEN COMPANY (US), LLC'S OPPOSITION TO TVISION INSIGHTS,
INC.'S MOTION TO CONSOLIDATE CASE NOS. 22-00057-CJB AND 22-01345-CJB
FOR ALL PURPOSES AND FOR REFERRAL TO JUDGE ANDREWS
<u>FOR TRIAL WITH CASE NO. 23-1346-RGA</u>**

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew L. Brown (#6766)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: February 21, 2024
11344544 / 14944.00004
PUBLIC VERSION Dated: February 27, 2024

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND - THE PARTIES AND cases .................................................................. 1

    A. The '889 case ............................................................................................................ 3

    B. The '243 case ............................................................................................................ 3

    C. The '030 case ............................................................................................................ 4

III. ARGUMENT ........................................................................................................................ 5

    A. The Balancing Factors Strongly Disfavor Consolidation ....................................... 6

    1. Nielsen Would Be Greatly Prejudiced By Consolidation ....................................... 6

    2. TVision Would Not Be Prejudiced If There Is No Consolidation ......................... 8

    3. No Efficiency Will Be Gained By Consolidating the Cases ................................. 10

    B. Reassignment Of Cases Proceeding Before Judge Burke Is Improper ................ 10

    C. The Cases Do Not Present Common Issues .......................................................... 11

IV. CONCLUSION ................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015) ......................................................................................................7

*Broadcom Corp. v. Qualcomm Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ......................................................................................................7

*Douglas Dynamics, LLC v. Buyers Products Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ....................................................................................................6

*Entropic Communications, LLC v. Charter Communications, Inc.*,
  2023 WL 5613185 (E.D. Tex. 2023) ............................................................................................8

*Ivanti, Inc. v. StayLinked Corp.*,
  No. 2:19-CV-00075, 2021 WL 12101018 (D. Utah Dec. 10, 2021) ............................................8

*Johnson Safety, Inc. v. Voxx Int'l Corp.*,
  2017 WL 1407634 (C.D. Cal. Apr. 17, 2017) ............................................................................11

*Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*,
  2022 WL 17484264 (E.D. Tex. July 7, 2022) ..............................................................................7

*Magna Electronics Inc. v. TRW Automotive Holdings, Corp.*,
  2014 WL 12572959 (W.D. Mich. 2014) ......................................................................................7

*Malibu Boats, LLC v. Kier's Choice, Inc.*,
  2019 WL 6352653 (E.D. Tenn. Nov. 27, 2019) ........................................................................12

*Moore v. CITGO Ref. & Chems. Co.*,
  735 F.3d 309 (5th Cir. 2013) ........................................................................................................9

*Myers v. New Castle Cnty.*,
  C.A. No. 12-1038-LPS, 2013 WL 3853181 (D. Del. July 24, 2013) .............................. 5-6, 8, 10

*Savoca v. United States*,
  199 F. Supp. 3d 716 (S.D.N.Y. 2016) ........................................................................................11

*Smith v. SEPTA*,
  47 F.3d 97 (3d Cir. 1995) .............................................................................................................9

*Solannex, Inc. v. MiaSole, Inc.*,
  2012 WL 1894268 (N.D. Cal. 2012) ..........................................................................................11

*Syngenta Seeds, Inc. v. Monsanto Co.*,
    C.A. No. 02-1331-SLR, 2004 WL 2002208 (D. Del. Aug. 27, 2004) ...................................... 10

*SZ DJI Tech. Co., Ltd. v. Autel Robotics*,
    USA LLC, 2018 WL 1316203 (D. Del. 2018) ........................................................................ 12

*Tabarestani v. Walmart Inc.*,
    No. 0:18-62963-CIV, 2020 WL 10058151 (S.D. Fla. Apr. 15, 2020) ...................................... 5

*TBC Consoles, Inc. v. Forecast Consoles, Inc.*,
    2008 WL 3919197 (S.D.N.Y., Aug. 22, 2008) ...................................................................... 12

*Tracinda Corp. v. DaimlerChrysler AG*,
    C.A. No. 00-984-JJF, 2001 WL 849736 (D. Del. July 26, 2001) ............................................. 5

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*,
    775 F. Supp. 759 (D. Del. 1991) ........................................................................................ 5, 11

**STATUTES & RULES**

28 U.S.C. § 636 (c) .............................................................................................................................. 6

28 U.S.C. § 636 (c)(4) ................................................................................................................ 1, 10-11

FED. R. CIV. P. 73(b)(3) ............................................................................................................... 10-11

I. **INTRODUCTION**

In seeking to consolidate the three pending cases Nielsen has filed against it, TVision asks to delay trial until 2026 in the earliest-filed of those cases – the one that asserts U.S. Patent No. 7,783,889 ("the '889 case."). The '889 case, which relates to different technology from the other cases, is scheduled for trial in just over seven months. Accordingly, there is little left to do before trial. Everything is complete except for *Daubert* and summary judgment motions, which the parties are preparing now and will be fully briefed before argument on the instant motion. Thus, consolidating the '889 case into the later-filed cases provides no economies or efficiencies. To the contrary, consolidating the cases (and delaying trial in the '889 case for nearly two years) will only serve to prejudice Nielsen by denying it the opportunity to obtain an injunction on the '889 patent, which will expire by TVision's proposed trial time. Conversely, TVision's claims to prejudice are not legally cognizable, and indeed, its own submission contradicts its financial hardship story. ███████████████████████████████████████

███████████████████████████████████████. And finally, TVision's motion is improper because it seeks to reassign cases before Judge Burke without satisfying the strict legal standard under 28 U.S.C. § 636 (c)(4). The Court should deny TVision's motion.

II. **BACKGROUND - THE PARTIES AND CASES**

Nielsen and TVision are engaged in the business of providing audience measurement data. ('889 case, D.I. 1 at ¶¶ 7-9, 27-28). In other words, they provide data regarding who has watched what content or advertisements on television or other media devices. Both companies use technology placed in participating homes that processes sound coming from the television to automatically identify content and performs certain other functions. (*Id.*, D.I. 1 at ¶ 31; *see*

Ex. H, https://www.nielsen.com/insights/2023/how-to-measure-tv-audiences/). For example, TVision's technology also engages in a separate process to analyze pictures of the television area and automatically determine, from eye gaze and head pose, whether audience members are paying attention to the television. (Ex. I, Infringement Contentions in case asserting U.S. Patent No. 11,470,243 ("'243 case").)

Nielsen and TVision are both direct[1] and indirect[2] competitors. In fact, TVision boasts that it is ready to "take on Nielsen" and has raised many millions of dollars in capital towards those efforts. (*Id*., D.I. 1 at ¶ 33.)

Nielsen has sued TVision in three pending cases, asserting a single patent in each. The earliest-filed case (the '889 case), filed on January 14, 2022, asserts U.S. Patent No. 7,783,889 ("the '889 patent"). The next-filed case (the '243 case), filed on October 12, 2022, asserts U.S. Patent No. 11,470,243 ("the '243 patent"), which issued on October 11, 2022. And the last-filed case ("the '030 case"), filed on November 22, 2023, asserts U.S. Patent No. 11,798,030 ("the

---

[1] [redacted]

[2] The companies are indirect competitors in the sense that TVision supplies data to Nielsen's competitors, including VideoAmp and iSpot. Without TVision's data VideoAmp and iSpot could not compete against Nielsen. [redacted]

'030 patent"), which issued on October 24, 2023. These cases, which were filed separately because of the patents' issue dates, concern completely distinct types of technologies and have only one thing in common – that they are all used in audience measurement.

      A.      <u>**The '889 case**</u>

Nielsen sued TVision on the '889 patent on January 14, 2022. ('889 case, D.I. 1.) Nielsen's complaint asserts that TVision infringes the '889 patent by automatically identifying television content through a specific mode of processing sound coming from the television. In particular, TVision captures the sound and uses software that performs a mathematical operation called a Fourier Transform and examines the resulting sound frequency characteristics. (*Id*. at ¶ 34; *See* '889 case, D.I. 1, Ex. A at 9:36-11:23; 14:20-19:39; Cl. 1).)

TVision infringes the '889 patent through its use of software provided by a company called ACRCloud. TVision agrees that ███████████████████████████████████████████████████████████████████████████████████████████████████████████

The parties in the '889 case consented to proceed before Magistrate Judge Burke. ('889 case, D.I. 17.) The case is nearly finished, and trial is set for October 7, 2024. By the time the instant motion is argued, the parties will have fully briefed summary judgment and *Daubert* motions, and nothing will be left for the parties to do except prepare for trial. (*Id*., D.I. 24.)

Nielsen does not practice the '889 patent.

      B.      <u>**The '243 case**</u>

On October 12, 2022, Nielsen sued TVision on the then-newly-issued '243 patent. ('243 case, D.I. 1.) Nielsen's complaint asserts that TVision infringes the '243 patent by capturing images of audience members and analyzing those images to detect a user's head—specifically,

3

by using the image recognition techniques described in the '243 patent. (*Id.*, D.I. 1 at ¶¶ 49-50.; '243 case, D.I. 1, Ex. A at 2:25-4:51; 6:3-44; Cl. 1.) Importantly, the technology of the '243 patent has nothing to do with the technology of the '889 patent. The '243 patent concerns *image* processing, and the '889 patent concerns *audio* processing. As explained above, the '889 patent's audio processing concerns examining sound frequency characteristics via mathematical transforms. In contrast, the '243 patent's image processing concerns manipulation of video pixel resolution to efficiently determine and locate image properties. ('243 case, D.I. 1, Ex. A at 3:31-4:14, 8:44-11:36, FIG. 4, Cls. 4-7.)

As in the '889 case, the parties in the '243 case consented to proceed before Magistrate Judge Burke. ('243 case, D.I. 11.) Discovery in the case is just beginning: The parties have exchanged some written discovery (*see*, *e.g.*, *Id.*, D.I. 27, 53, 64), but document productions are ongoing, and no depositions have been scheduled. (*Id.*, D.I. 17.) Opening expert reports are due on November 1, 2024, case dispositive motions are scheduled to be heard on March 14, 2025, and trial is scheduled to begin on November 3, 2025. (*Id.*) TVision has moved to stay the '243 case pending the Patent Trial and Appeal Board deciding its petition for *inter partes* review. (*Id.*, D.I. 85.)

      C.    <u>**The '030 case**</u>

On November 22, 2023, Nielsen filed a third suit against TVision to assert the newly-issued '030 patent (the "'030 case"). ('030 case, D.I. 1.) Nielsen's complaint asserts that TVision infringes the '030 patent by providing an app to mobile devices that interfaces with a metering device via a wireless connection—specifically, by using the connection technique described in the '030 patent. (*Id.*, D.I. 1 at ¶¶ 38-39; '030 case, D.I. 1, Ex. A, '030 patent at 5:48-6:3, Cl. 1.) The technology of the '030 patent is not related to the technology of either the '889 patent or the

'243 patent. The '030 patent concerns networking technology to connect a mobile device to an audience measurement meter. ('030 case, D.I. 1, Ex. A, '030 patent at 5:48-6:3, Cl. 1.) It has nothing to do with the audio processing technology of the '889 patent or the video image manipulation of the '243 patent.

The parties did not consent to a magistrate in this case, so it is proceeding before Judge Andrews. As of the filing of this brief, no scheduling conference has been set.

## III.   ARGUMENT

The Court should not consolidate the three pending cases.[3] As a threshold matter, for consolidation to be imposed, the cases must present substantial "common questions of law or fact." (*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991).) Moreover, in deciding consolidation motions, Courts balance any potential benefits to be gained against "the risk of prejudice and confusion wrought by consolidation." (*Myers v. New Castle Cnty.*, C.A. No. 12-1038-LPS, 2013 WL 3853181, at *1 (D. Del. July 24, 2013); *see also Tracinda Corp. v. DaimlerChrysler AG*, C.A. No. 00-984-JJF, 2001 WL 849736, at *1 (D. Del. July 26, 2001) (holding that consolidation is not warranted when it would unfairly "prejudice the rights of the parties as a result of consolidation.").) Nor is consolidation appropriate when it would effectively circumvent rules relating to judicial case assignments, particularly rules requiring a party to demonstrate "extraordinary circumstances" in support of a withdrawal of consent to proceed before a magistrate judge. (*See*, *e.g.*, *Tabarestani v. Walmart Inc.*, No. 0:18-62963-CIV, 2020 WL 10058151, at *1 (S.D. Fla. Apr. 15, 2020) ("Once a civil case has been

---

[3] Although Nielsen's view is that consolidation of any of the cases would be inappropriate, it would be particularly inappropriate to consolidate the '889 case, which is close to trial, with either of the other cases. If the Court is inclined to consider any consolidation, it should only consider consolidation of the '243 and '030 cases.

referred to a magistrate judge on the consent of the parties under 28 U.S.C. § 636 (c), the reference can be withdrawn only 'for good cause shown on its own motion, or *under extraordinary circumstances* shown by any party.'") (emphasis added).)

All of the above-mentioned factors disfavor consolidation of the cases against TVision.

A. <u>**The Balancing Factors Strongly Disfavor Consolidation**</u>

1. **Nielsen Would Be Greatly Prejudiced By Consolidation**

As explained above, Courts consider potential prejudice when deciding consolidation motions. *See Myers*, 2013 WL 3853181, at *1. Here, Nielsen would be greatly prejudiced if the Court were to consolidate the cases, and thus, TVision's motion should be denied.

Most importantly, TVision's motion demands a two-year delay of trial that would unfairly *eliminate* Nielsen's ability to obtain the relief it seeks in the '889 case. Nielsen seeks an injunction because monetary damages will not sufficiently compensate it for TVision's infringement. Ex. K, Keeley Rep. at ¶ 59. But injunctions are only available before a patent's expiration. (*See*, *e.g.*, *Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336 at 39 (Fed. Cir. 2013).) The '889 patent expires in the first quarter of 2026 ('889 case, D.I. 1, Ex. A), and thus, if the Court grants the instant motion and delays the trial until 2026, Nielsen will have no opportunity to obtain an injunction (which, under the current trial schedule would be a potential remedy for the period between October 2024 through early 2026). The extreme prejudice to Nielsen of eliminating this relief greatly outweighs any potential burden on TVision of maintaining the existing trial schedule. Indeed, as explained below, TVision would suffer no legally cognizable prejudice under the current trial schedule.

TVision misstates the law in arguing that "case law dictates that Nielsen, as a non-practicing entity as to the '889 patent, which doesn't compete directly with TVision, should not

6

be entitled to an injunction," (Mot. at 7). In fact, the Federal Circuit has held that injunctions are appropriate where the parties are direct or indirect competitors, ***even when the patentee does not practice the patent***. *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008) (holding an injunction was appropriate against indirect competitor even though the plaintiff did not practice the patent: "Broadcom provided evidence of irreparable harm, despite the fact that it does not currently practice the claimed inventions … . In sum, the district court did not abuse its discretion in issuing the permanent injunction against Qualcomm."). TVision cites a concurring opinion in *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 650-52 (Fed. Cir. 2015) (Reyna, J., concurring), to support its argument. But that opinion merely notes that irreparable injury is unlikely when plaintiffs are non-practicing entities whose primary goal in litigation is to "obtain licensing fees." *Id*. at 650.[4] The concurring opinion is, however, consistent with *Broadcom* in stating that an injunction is appropriate where (as in that case and in the present case) the parties are competitors, *even when the patentee does not practice the asserted patent*. *Id*. at 650-51.

Moreover, consolidation requests (like TVision's) that inject long and unnecessary delays in a case have been found unfairly prejudicial even when an injunction is not at play. (*See Koninklijke KPN N.V. v. Telefonaktiebolaget LM Ericsson*, 2022 WL 17484264, at *2 (E.D. Tex. July 7, 2022) (holding that even a delay in recovering solely monetary damages "is far from non-prejudicial").) And some courts have found that combining cases at different stages renders consolidation inappropriate because of the resulting prejudice to the non-moving party. *See Magna Electronics Inc. v. TRW Automotive Holdings, Corp.*, 2014 WL 12572959, at *3 (W.D. Mich. 2014) (denying accused infringer's motion to consolidate when the earlier filed case was

---

[4] In addition, there is no such thing as a "non-practicing entity as to the '889 patent." Nielsen uses other innovations in this space rather than the '889 patent. When Judge Reyna refers to "non-practicing entities," he means entities that do not have a relevant business at all.

7

too far along and consolidation would require delaying the resolution of the earlier filed suit which would prejudice the patentee as it competed with the accused infringer: "Magna is correct that further delay in Magna I and II would cause it prejudice. … [F]urther delay will also cause prejudice in the form of continuing legal expenses and prolonged uncertainty as to the parties' business activities"); *Entropic Communications, LLC v. Charter Communications, Inc.*, 2023 WL 5613185, at *2 (E.D. Tex. 2023) (denying motion to consolidate two actions involving related patents because "[t]he cases are simply too far apart," and it would be prejudicial to force the plaintiff "to delay in bringing its case to trial before a jury").

'The '889 case at an advanced stage. It is essentially finished; it has already completed claim construction, fact discovery, and expert discovery, and by the time the instant motion is argued, *Daubert* and summary judgment motions will be fully briefed. Nonetheless, TVision seeks, for legally irrelevant reasons (as explained below), to consolidate the '889 case with the later-filed cases (which are far behind the '889 case) and move the trial to 2026. The severe prejudice that Nielsen would suffer therefore strongly disfavors consolidation.

### 2. TVision Would Not Be Prejudiced If There Is No Consolidation

Continuing with the prejudice factor of the *Myers* balancing analysis, TVision would not be prejudiced in a legally cognizable way if there is no consolidation. *See Myers*, 2013 WL 3853181, at *1. ███████████████████████████████████████████████ ███████████████████████. (Motion at 1, 9, 12; ███████████████████

But courts have held that a party's financial situation, or financial disparity between parties, is irrelevant when considering case scheduling issues. (*See Ivanti, Inc. v. StayLinked Corp.*, No. 2:19-CV-00075, 2021 WL 12101018, at *5-6 (D. Utah Dec. 10, 2021) ("StayLinked failed to cite, and this court has been unable to find, a single case that links 'good cause' for

8

modifying a scheduling order to a party's financial situation or a financial disparity between the parties. Accordingly, StayLinked's financial arguments do not constitute 'good cause.'"); *see also*, *e.g.*, *Smith v. SEPTA*, 47 F.3d 97 (3d Cir. 1995) (holding that a disparity in financial resources between parties does not support award of costs to losing party); *Moore v. CITGO Ref. & Chems. Co.*, 735 F.3d 309, 319–20 (5th Cir. 2013) ("reducing or eliminating a prevailing party's cost award based on its wealth – either relative or absolute – is impermissible as a matter of law.").) Notably, while TVision complains of the cost of presenting its CEO, CFO, and CTO as witnesses for multiple trials (Ex. 1 to Motion at ¶ 6), it cites no authority holding that any such burden is a relevant consideration.

Perhaps more importantly, TVision has not even shown that trying the '889 case in October 2024 would constitute any financial burden on it. In fact, TVision admits that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Even TVision's claim that the ongoing cases have ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ seems to be incorrect. The revenue figures TVision provided with its motion show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Put simply, the financial figures that TVision offers do not support its position. Rather, those figures only highlight Nielsen's need to proceed quickly to trial to obtain an injunction to stop TVision from using Nielsen's technology.

9

### 3. No Efficiency Will Be Gained By Consolidating the Cases

The next part of the balancing analysis looks to potential benefits associated with consolidation, such as efficiency. *See Myers*, 2013 WL 3853181, at *1. Here, consolidation leads to no efficiency benefit. In particular, having multiple cases will not waste judicial resources with duplicative discovery ***because fact and expert discovery in* the '889 case *have already closed***. On the contrary, consolidating the cases is very likely to *waste* resources because it will require the Court and the parties to pause all work on the '889 case just months before trial and get back up to speed to restart trial preparation after two years.

### 4. Consolidation Would Result in Jury Confusion

The final part of the balancing analysis takes confusion into account. *See Myers*, 2013 WL 3853181, at *1. Trying all three pending cases against TVision before a single jury is highly likely to result in confusion, rather than efficiency, since the technologies at issue are complex and different. *See Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No. 02-1331-SLR, 2004 WL 2002208, at *2 (D. Del. Aug. 27, 2004) ("[T]he BTC I case alone is highly complex. Adding another patent to the plaintiff's claims will only increase the case's complexity and make it that much harder for a jury to come to a resolution.").

### B.   Reassignment Of Cases Proceeding Before Judge Burke Is Improper

TVision's motion should also be denied for improperly attempting to withdraw consent to proceed before Magistrate Judge Burke in the '889 and '243 cases without demonstrating the "extraordinary circumstances" required under the law. *See* 28 U.S.C. § 636 (c)(4) (authorizing withdrawal of consent only "under extraordinary circumstances shown by any party"); Fed. R. Civ. P. 73(b)(3).

By mislabeling its request as a motion to consolidate, TVision attempts to have cases transferred to Judge Andrews under a lower standard than the "extraordinary circumstances" that these rules require. TVision should not be permitted to obtain that relief without meeting the very high standard required under 28 U.S.C. § 636 (c)(4) and Fed. R. Civ. P. 73(b)(3), which its motion does not even attempt to do. (*See Savoca v. United States*, 199 F. Supp. 3d 716, 721 (S.D.N.Y. 2016) ("The 'extraordinary circumstances' standard is a high bar that is difficult to satisfy.").)

Other courts have declined to consolidate cases in circumstances similar to those here. *See Solannex, Inc. v. MiaSole, Inc.*, 2012 WL 1894268, at *2 (N.D. Cal. 2012) (denying an accused infringer's motion to consolidate a "newly-filed case involving the same parties, the same counsel, patents from the same family with many of the same claim terms, the same inventor, the same prosecution counsel, many of the same witnesses, and the same accused products," because the patentee, while consenting to the magistrate trying the original case, declined to have the magistrate try the newly-filed case.)

TVision's motion should be denied for this additional reason as well.

### C. The Cases Do Not Present Common Issues

The three cases that TVision seeks to consolidate share minimal factual and legal overlap, failing to clear the initial hurdle necessary for the court to even consider consolidation. *Waste Distillation*, 775 F. Supp. at 761. Each of the three asserted patents is unrelated to the others, as they (1) were not considered related at the patent office, (2) do not share any common figures or portions of their respective specifications, and (3) do not share any common inventors. (*See* § II.a above). This fact alone strongly disfavors consolidation. *Johnson Safety, Inc. v. Voxx Int'l Corp.*, 2017 WL 1407634, at *2 (C.D. Cal. Apr. 17, 2017).

11

Indeed, TVision cites no precedent consolidating patent infringement lawsuits in which the asserted patents did not share at least one of these common elements. In *SZ DJI Tech. Co.*, the relevant patents shared common "inventors, and priority periods," which the court held was an important factor in its decision to consolidate. *SZ DJI Tech. Co., Ltd. v. Autel Robotics*, USA LLC, 2018 WL 1316203, at *1 (D. Del. 2018).) Similarly, in both *TBC Consoles* and *Malibu Boats*, the courts explained that consolidation was appropriate specifically because the patents at issue were related. (*TBC Consoles, Inc. v. Forecast Consoles, Inc.*, 2008 WL 3919197, at *1 (S.D.N.Y., Aug. 22, 2008) (consolidating cases where the "two actions involve related patents"); *Malibu Boats, LLC v. Kier's Choice, Inc.*, 2019 WL 6352653 (E.D. Tenn. Nov. 27, 2019) (consolidating cases where patent in second filed suit was a continuation of patents in the first action).) TVision's remaining citations (*i.e.*, *Project Lifesaver*, *In re Fuwei Films Sec. Litig*, *Versace*) are similarly irrelevant, as they are not patent cases and therefore do not support consolidating cases involving two or more unrelated patents.

In addition, the three patents at issue share no overlap in the technologies described and claimed. The '889 patent claims a specific technique for automated content recognition using digital spectral analysis of an audio signal. ('889 case, D.I. 1, Ex. A at 9:36-11:23; 14:20-19:39; Cl. 1.) The '243 patent, in contrast, claims techniques for image analysis using manipulation of pixel resolution. ('243 case, D.I. 1, Ex. A at 2:25-4:51; 6:3-44, Cl. 1.) And the '030 patent claims the use of short-range wireless communication protocols with mobile devices for network connection and to detect the presence of a individuals in a household. ('030 case, D.I. 1, Ex. A at 5:48-6:3, Cl. 1.)

TVision attempts to manufacture a close link between these technologies by asserting that each patent claims the use of a "fingerprint" or "signature." Motion at 5, 10. This argument

12

ignores the fact that only the '889 patent claims a method of generating an audio signature. The '243 and '030 patents contain claims with peripheral elements that describe using mention fingerprints, but their claims are not directed to methods of generating fingerprints. The '243 patent claims are directed to analysis of audience members from captured image data. It recites the use of a signature but contains no limitations directed to the generation or format of that signature. ('243 case, D.I. 1, Ex. A at Abstract, Cl. 1.) The '030 patent's claims are directed to using short-range wireless protocols for mobile devices to enable network connection and to generate data indicating the presence of a particular audience member. And the '030 patent's claims, while they mention a fingerprint, do not contain limitations as to the format or generation of fingerprints. ('030 case, D.I. 1, Ex. A at Abstract, Cl. 1.)

In addition, TVision grossly oversimplifies the patents of all three pending cases by claiming they are all directed to "audience monitoring." At such a high level, *any* patent lawsuit against TVision would likely relate to the "same technology," since TVision is an audience measurement company and its product is directed to audience monitoring. Analogously, any patents asserted against Microsoft could likely be oversimplified as relating to "computing." But each of the patents actually claims specialized technology in the audience measurement field, including specific elements of audience monitoring systems that are in different technological fields. Unsurprisingly, the infringement allegations that Nielsen provided for each of these patents analyze different technologies (*see* '889 case, D.I. 1 at ¶ 34; '243 case, D.I. 1 at ¶¶ 49-50; '030 case, D.I. 1 at ¶¶ 38-39) and will require the expertise of different witnesses who are

13

familiar with these different technological fields. Similarly, any prior art challenges to these patents requires the use of different references directed to different technological fields.[5]

## IV. CONCLUSION

Nielsen respectfully requests that the Court deny TVision's motion.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Steven Yovits
Douglas Lewis
Constantine Koutsoubas
Jason P. Greenhut
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Jolie Schenerman
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

Dated: February 21, 2024
11344544 / 14944.00004
PUBLIC VERSION
Dated: February 27, 2024

By: */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel: (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

---

[5] Indeed, the prior art asserted by TVision in C.A. No. 22-00057-CJB is different from the prior art TVision asserts in the IPR related to the '243 patent in C.A. No. 22-01345-CJB.