IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE


THE NIELSEN COMPANY (US), LLC,        )
                                      )
-------------------Plaintiff,         )
                                      ) Case No.
 vs.                                  ) 22-CV-1345-CJB
                                      )
TVISION INSIGHTS, INC.,               )
                                      )
-------------------Defendant.         )

TRANSCRIPT OF STATUS CONFERENCE


STATUS CONFERENCE had before the Honorable Christopher J. Burke, U.S.M.J., via teleconference on the 10th of February, 2025.



APPEARANCES

POTTER ANDERSON & CORROON LLP
        BY:  DAVID MOORE, ESQ.

                    -and-

KELLEY DRYE & WARREN LLP
        BY:  STEVEN YOVITS, ESQ.

                          Counsel for Plaintiff


SHAW KELLER LLP
        BY:  ANDREW RUSSELL, ESQ.

                          -and-

RIMON, P.C.
        BY:  ERIC COHEN, ESQ.

                          Counsel for Defendant

THE COURT:  I know we have counsel for both sides on the line and our court reporter as well.  With that said then, why don't we go on the record, and as we do, let me just say a few things for the record.

First, I apologize for the hoarseness in my voice.  The Court is an Eagles fan and last night was a very exciting night in the history of sports fandom, but I know it's going to make it a little harder for the parties to hear me, so apologies in advance.

As we go on the record here, we're here in the matter of *The Nielsen Company (U.S.), LLC, versus TVision Insight, Inc.*  This is Civil Action Number 22-1345-CJB here in our court.  We're here for a case management status teleconference in light of the defendant's request that we enter a partial case schedule and the plaintiff's opposition to that as well as an appeal to an IPR matter.

Before we go further, let's have counsel on the line for each side identify themselves for the record. We'll start first with counsel for the plaintiff's side and begin there with Delaware counsel.

MR. MOORE:  Good morning, Your Honor.  David Moore from Potter Anderson on behalf The Nielsen Company. I'm joined by my co-counsel Steve Yovits from Kelley Drye & Warren.

THE COURT:  Good morning to all of you, and

we'll do the same for counsel on Defendant's side and, again, we'll begin with Delaware counsel.

MR. RUSSELL:  Good morning, Your Honor.  This is Andrew Russell for Defendant TVision, and with me on the line is Eric Cohen.

THE COURT:  Okay.  And good morning to you both as well.

All right.  So, counsel, I reviewed the parties' letters.  I think just for the record -- and I should say the parties' joint letter is DI 111, which set out kind of the parties' positions, and at DI 113, the parties submitted some proposed dates for a revised schedule to be used if the Court decided to lift the stay of the action and enter a scheduling order in the case at this time.

And then, just as way of additional background, the parties in their letter told the Court that -- about the current procedural posture, which is that this case was stayed pending an IPR in the Patent Trial and Appeal Board regarding the asserted claims of the one patent-in-suit, the '243 patent.

At the beginning of January of this year, the PTAB issued a final written decision with regard to that patent, which was favorable to Defendant's side, and the plaintiff is appealing that decision, and so the dispute here is whether, with the PTAB's decision now having been

rendered, albeit on appeal, the defendant asks that the Court issue a schedule with regard to an antitrust counterclaim, which has some relation to the patent.  The parties differ about how much.

And the plaintiff opposes the entry of a schedule at all.  It asks that the Court retain the stay in the case pending the conclusion of the appeal, and if the Court is not going to do that, it asks the Court to not issue a schedule in lieu of resolving the plaintiff's motion to dismiss the antitrust counterclaim.

So I think that's the procedural posture.  Let me give counsel a chance to make brief argument if they wish to, and then I'll try get you a decision.  I'll turn first to Plaintiff's side.  Who's going to be speaking on behalf of the plaintiff?

MR. YOVITS:  Good morning, Your Honor.  This is Steven Yovits on behalf of Nielsen.

THE COURT:  Okay, Mr. Yovits.  I guess understanding the context here, I guess one way to ask it is if the roles were reversed and you had a patent case where the plaintiff had filed, you know, its patent infringement case against the -- relating to, you know, its patent and the defendant had filed for IPR and it had gotten instituted but the defendant had lost in the IPR but said, "Look, we're going to appeal" and the defendant also in the district

court filed a motion to dismiss the plaintiff's complaint, my guess is if you were on the plaintiff's side in that case, you would be telling me we don't typically -- once we get a decision from the PTAB, we don't typically extend that stay that's unfavorable to the movant.  We don't extend that stay while we're waiting for the appeal, and we should enter a schedule because waiting on a decision on a motion to dismiss will just continue to extend the time in which this case would be pending.

Here, seems like the roles are reversed, but you are asking me to do kind of just those things.  Give me your take on why, now that the plaintiff is in this position, which maybe is the flip of the position that a plaintiff like you might otherwise be in, it's a good idea to hold things up.

MR. YOVITS:  Yes, Your Honor.  I think this is a little bit different than the typical situation.  I think the most important thing to point out here is an argument that TVision made in its letter to the Court, which was DI 86, when it was seeking a stay in this case.  And TVision pointed out, citing the *Cabo* case, that a stay in this case would not cause anyone undue prejudice because Nielsen and TVision are not directly competitors, and that certainly has not changed.

The other thing I think that is a little bit

different here is that the schedule that TVision initially proposed and has agreed to and was now submitted in DI 113 suggested staying everything in the case until after the IPR appeal except for discovery, fact discovery, on the antitrust counterclaim.

But in terms of everything else, all the expert discovery, dispositive motions, and trial, everything is -- they suggested to stay until after the IPR appeal. So in terms of prejudice, I don't think there's really an argument that there could be undue prejudice to TVision. And then --

THE COURT: Can I just -- let me just jump in on the two things that you mentioned.

I think the first was you said, well, look, you know, Defendant's view is that we're not competitors and so, you know, just the fact that there's no harm no foul from the stay. I think you were telling me at the motion to stay stage that that's wrong and that there is competition of a type, and I think in my order I kind of recognized that it wasn't a crystal clear issue, although the competition issue is murky. But on that front, as to competition, the position you took is -- it's a different one than the defendants are taking, I guess is a question to you.

And then the other question about the second part of what you said is seems like their proposal that we move the case forward so we're not stuck in neutral as to

the antitrust counterclaim, but maybe we recognize as a nod to the plaintiff we don't want to get too far ahead.  Let's not have the schedule run all the way to trial for now. Let's get some work done and see what happens to the appeal. Why wouldn't that be a nice middle ground?

So just get your responses on both those points.

MR. YOVITS:  Your Honor, you're correct that the parties are in somewhat reversed position since TVision was asked the first day.  However, I think the Court's decision to stay the case originally was based on disagreeing with our position, and we had to live with that, and I think that it's still true.  I don't think that -- it is true we were urging for a different conclusion, but I think the Court disagreed with us, and that is -- that, I think, was a reason for going against what we wanted earlier.

THE COURT:  Fair enough.  Okay.

MR. YOVITS:  In terms of the proposal to sort of go ahead and do the part of the case that's going to be burdensome on Nielsen, I think the antitrust counterclaim -- antitrust discovery, of course, is generally very burdensome.  If we're going to have to do it, there ought to be a good reason for it.

I think that, as the Court has noted, the antitrust counterclaim and the patent have some inextricably intertwined issues and, therefore, it really doesn't make

sense to go forward with what the Court just referred to as a middle ground because we don't really get anything for it. We're not going to get to trial before the antitrust counterclaim -- before the IPR appeal is resolved, and there are -- again, like, for example one of the things that Nielsen has been accused of in the antitrust counterclaim is knowingly presenting an unreasonable claim construction to read it onto the accused devices or systems, and so, presumably, for the antitrust case, the Court would be looking at -- would be looking at deciding if our claim construction is reasonable, but then if the patent comes back, we'd have to revisit the exact constructions.

THE COURT:  Okay.  Fair enough.  Anything further, Mr. Yovits, that you wish to add?

MR. YOVITS:  No, Your Honor.

THE COURT:  Okay.  Thank you.  Let me hear from the other side for TVision's counsel.

MR. COHEN:  This is Eric Cohen, Your Honor.

First of all, I think the schedule that we, the defendants, have proposed lets us do some discovery that we think we need to do at this point because we're concerned about evidence disappearing.  There was an agreement -- there was an agreement that was made in 2018.  There have been agreements between Nielsen and its customers that preclude or make difficult for those customers to use

TVision's data.  We want to get discovery on that, and the longer we wait the more likely it is that some of those documents may be gone because of document management -- document management strategies or protocols at various third parties which we don't know about and have no control over. So we would like to get going on that.

We don't -- I think counsel described the discovery as -- on the antitrust as burdensome, but the parties have agreed in the most recent proposed schedule that the number of interrogatories, the number of depositions that -- prescribed by the federal civil procedure are exactly those that are prescribed by the federal rules.  So we're not asking that the number of interrogatories be increased or the number of depositions be increased.

We don't think that this is going to be any more burdensome than the discovery that TVision has had to undergo in all the patent cases that they filed against our client, all of which so far except one have been dropped. So it's just discovery.  Yes, it's an antitrust case.  Not every antitrust case involves burdensome discovery, and there's nothing in the record to indicate that this one would.

Counsel talked about bogus claim construction. I don't recall anywhere in the antitrust counterclaim where

we accused them of bogus claim construction.  We accused them of filing objectively baseless infringement cases, and they dropped every one except the one where they've now -- the '057 case where they've now conceded that they can't prove infringement with the current expert reports and asked for a do-over.  That motion is pending in that case before Your Honor.

We don't think any of this is burdensome.  We think we should be able to at least get this other part of the antitrust case done.  We baked in -- when the Federal Circuit decision comes down -- in my experience in appeals in PTAB cases, it usually takes 12 to 15 months.  We should be in a position to either move the case on quickly or if it's one of those 25 percent of the cases where there's actually a reversal or remand, we can visit that with Your Honor then.

THE COURT:  Okay.

MR. COHEN:  And I want to just say if I may, on the motion to stay pending the motion to dismiss that they haven't filed yet, we would like an opportunity to brief that under the Court's scheduling order which provides for briefing.  We have actually -- on that issue that they raise in their letter, we devoted two sentences to that issue.

THE COURT:  Mr. Cohen, you mean to brief the stay issue as it relates to the motion to dismiss?

MR. COHEN:  Yes.

THE COURT:  Okay.  And I guess the other question for you is the antitrust counterclaim writ large. Obviously, there is some relation to it and its allegations vis-a-vis the '243 patent.  I think you make the point in your letter that even if that's so, Judge, the antitrust counterclaim is itself broader than that, and it has a number of aspects to it that don't really touch on kind of a final decision about the validity of that patent.  Is there anything more you want to say in that regard?

MR. COHEN:  Well, there are -- there is a count involving Nielsen's refusal to renew TVision's license to Gracenote after Nielsen acquired Gracenote, which caused Nielsen -- excuse me which caused TVision to have to go out and license the ACR software from ACR Cloud, which Nielsen then turned around and sued us for infringing, and that deal was in 2018.  We're concerned about that.

We're concerned about the movement of employees and memories fading and documents being available and stuff like that.  But we're also concerned about -- there's another count, and that involves Nielsen's agreements with its own customers that preclude them from using TVision's data if they have -- if they use Nielsen's data.  And they either prohibit it or, as I understand it, they -- as I recall, they condition it on an additional payment which

acts sort of as a barrier to using TVision's data.  That's a separate -- has nothing to do with the -- with the patent infringement -- with the validity of the patent in this case.

And the third thing is the serial filing of baseless patent infringement suits, and there is Third Circuit precedent that says that that sort of an exception to the professional real estate rule and gets judged on its own, you know, on its own -- sort of like a different standard.  So we have those things that have nothing to do with the validity of the '243 patent which is at issue in this case.

THE COURT:  Okay.  Thank you, Mr. Cohen, and thanks to counsel.  Let me go ahead and try to give you a decision.  I'll do so orally, and the transcript of our call will serve as the substance of the Court's order because I know the parties want a decision to try to move forward here or to know whether they're moving forward.

With regard to the issue of whether the Court should maintain a full stay in the case or to lift the stay, I'll address that as it relates to the -- the stay in favor of an appeal from Plaintiff to the PTAB's decision.  And in that regard, I'll order that the stay should be lifted and that the pendency of that appeal should not serve as a barrier to things moving forward in this court.

Let me say why I say that for a few reasons. Obviously, I'm taking into account the three stay-related factors, and to a great degree, Factors 2 and 3 are not much different than they were when I issued a decision on the overarching stay motion at DI 104 on the docket. But I think think the simplification factor in terms of the events that have occurred, I think they now mitigate in favor of lifting the stay and allowing the defendant's antitrust counterclaim to proceed forward, even in light of the pendency of the appeal. I say that for a few reasons.

One is I'll just note that I think it is the case that if the roles were reversed, our court and I typically do not continue stays when the PTAB decision is one that is favorable to the party who is seeking to move a case forward in our court. For example, in a more traditional scenario where a plaintiff filed its patent infringement suit and, say, the Court stayed a case in favor of an IPR filed by the defendant as to asserted claims in that patent, if the PTAB's decision was that the claims of the patent were not invalid, then the Court would almost certainly be moving the case forward for the plaintiff in that scenario even if the defendant said I'm going to appeal that to the Federal Circuit.

And I think the idea is that, look, we had a stay. We get a great benefit out of the stay in that we got

a decision from the PTAB, but those PTAB decisions are often, not always but often, upheld by the Federal Circuit. And the time involved in a Federal Circuit appeal can be very long.  When you add that time on to the time involved in the prior stay, it can really be onerous for the party who has to wait, and especially if they have to wait in a scenario where they got a favorable decision at the PTAB level.

Here, in our case, we did get a benefit out of the stay in that, at least as to the patent infringement suit in the case, we've got a patent that at least for now looks to be invalid.  And yet I did grant a full stay in the case back at DI 104 and I included the antitrust counterclaims then, so the defendant has had to wait too, but now we're in a place where, again, we have an antitrust counterclaim where, in light of what's going on in the PTAB, there really isn't a great reason to make the defendant continue to wait longer to prosecute that otherwise-continuing viable claim.

And there is -- although there's a chance that the PTAB's decision could be different in the future, again, I think that's probably one that is a lower percentage chance for the reasons Defendants say in their letter.  And if it ever came to pass, one that we could incorporate if we needed to back into our plan for the case.

I'll also note for the record, and I think this relates to other considerations regarding the stay factors, while there is a relationship between the '243 patent and its validity to the antitrust counterclaim at issue, it is true, also, that the antitrust counterclaim has various aspects to it, some of which are broader and different than that issue, and I think that also mitigates in favor of moving forward on that claim.

And I think -- so for those reasons, I think the calculus has changed vis-a-vis the antitrust counterclaim. I think we should move forward with that counterclaim.

And I also will note I think the defendants, they could have sought the entry of a schedule through to trial, but they haven't.  They've proposed a schedule where we would complete fact discovery but we would not necessarily set dates for the remaining dates until the appeal has resolved.  And I think in some way, that was a middle ground allowing the case to move forward in some real respect as to the counterclaim but acknowledging that there may be a point at which we could then pause and see what happens at the appellate side, which I think is a reasonable approach.

So I'll order, additionally, that the parties should jointly submit a scheduling order that mirrors the defendant's proposal that I can then issue on the docket and

sign.

Now, additionally, I note that the plaintiff has asked that I stay the case, even if I'm not inclined to do so in favor of the pendency of the appeal, that I do so in favor of a motion to dismiss that it's going file with regard to the antitrust counterclaim. And I'm going to agree with the defendant. I'm not going to decide that issue now. If the motion is filed and Plaintiff wishes to renew that request, I do think it's fair to at least give the parties a brief chance to address specifically why that motion should or shouldn't stand in the way of continuing to move forward.

I don't think, if that came to pass, we'll need full briefing on that issue. What I would say is if a motion to dismiss is filed and at the time of that motion the plaintiff still wishes to seek to stay discovery, which will now have been started and ongoing, in favor of that motion, the plaintiff can file a one-page letter indicating that that's the case. And then what I'll do is set a mini briefing schedule which would give the parties a page or two to tell me their position on why it is, specifically as it relates to the motion to dismiss, I should stop the presses and I'll address that specifically.

So for now, the stay is lifted. I'll ask the parties to submit a proposed schedule that mirrors the

defendant's proposal by no later than close of business tomorrow. We'll enter that schedule, and then, pending the filing of a motion to dismiss and a renewed stay requested in favor of it, I'll set a new briefing schedule with regard to that motion.

I think that covers the issues here, and as I said, the transcript of our teleconference today will serve as the substance of the Court's order regarding this dispute.

With all that said, is there anything further I need to clear up from a procedural perspective before we conclude today on behalf of Plaintiff's counsel?

MR. YOVITS:  No, Your Honor.

THE COURT:  And on behalf of Defendant's side?

MR. COHEN:  No, Your Honor.

THE COURT:  Okay. All right. Then I'll look forward to getting the schedule for the parties and continuing to work with you on this matter. With that, wish everybody a good day and good week, and our teleconference will come to an end and the Court will stand in recess. Thank you.

# C E R T I F I C A T E

I, Deanna L. Warner, a Registered Professional Reporter, do hereby certify that as such Registered Professional Reporter, I was present at and reported in Stenotype shorthand the above and foregoing proceedings.

_____
Deanna L. Warner, RPR, CSR
Official Court Reporter
U.S. District Court

**'**

**'057** [1] - 10:4
**'243** [4] - 3:20, 11:5, 12:11, 15:3

**1**

**104** [2] - 13:5, 14:13
**10th** [1] - 1:12
**111** [1] - 3:10
**113** [2] - 3:11, 6:2
**12** [1] - 10:12
**15** [1] - 10:12

**2**

**2** [1] - 13:3
**2018** [2] - 8:23, 11:17
**2025** [1] - 1:12
**22-1345-CJB** [1] - 2:12
**22-CV-1345-CJB** [1] - 1:5
**25** [1] - 10:14

**3**

**3** [1] - 13:3

**8**

**86** [1] - 5:20

**A**

**able** [1] - 10:9
**account** [1] - 13:2
**accused** [4] - 8:6, 8:8, 10:1
**acknowledging** [1] - 15:19
**acquired** [1] - 11:13
**ACR** [2] - 11:15
**Action** [1] - 2:12
**action** [1] - 3:13
**acts** [1] - 12:1
**add** [2] - 8:14, 14:4
**additional** [2] - 3:15, 11:25
**additionally** [2] - 15:23, 16:2
**address** [3] - 12:21, 16:10, 16:23
**advance** [1] - 2:9
**agree** [1] - 16:7
**agreed** [2] - 6:2, 9:9

**agreement** [2] - 8:22, 8:23
**agreements** [2] - 8:24, 11:21
**ahead** [3] - 7:2, 7:18, 12:14
**albeit** [1] - 4:1
**allegations** [1] - 11:4
**allowing** [2] - 13:8, 15:18
**almost** [1] - 13:20
**AND** [1] - 1:2
**Anderson** [1] - 2:22
**ANDERSON** [1] - 1:15
**Andrew** [1] - 3:4
**ANDREW** [1] - 1:21
**antitrust** [24] - 4:2, 4:10, 6:5, 7:1, 7:19, 7:20, 7:24, 8:3, 8:6, 8:9, 9:8, 9:20, 9:21, 9:25, 10:10, 11:3, 11:6, 13:8, 14:13, 14:15, 15:4, 15:5, 15:10, 16:6
**apologies** [1] - 2:9
**apologize** [1] - 2:5
**appeal** [17] - 2:16, 3:18, 4:1, 4:7, 4:25, 5:6, 6:4, 6:8, 7:4, 8:4, 12:22, 12:24, 13:10, 13:22, 14:3, 15:17, 16:4
**appealing** [1] - 3:24
**appeals** [1] - 10:11
**APPEARANCES** [1] - 1:14
**appellate** [1] - 15:21
**approach** [1] - 15:22
**argument** [3] - 4:12, 5:18, 6:9
**aspects** [2] - 11:8, 15:6
**asserted** [2] - 3:19, 13:18
**available** [1] - 11:19

**B**

**background** [1] - 3:15
**baked** [1] - 10:10
**barrier** [2] - 12:1, 12:25
**based** [1] - 7:10
**baseless** [2] - 10:2, 12:6
**begin** [2] - 2:20, 3:2
**beginning** [1] - 3:21
**behalf** [5] - 2:22, 4:14, 4:17, 17:12, 17:14

**benefit** [2] - 13:25, 14:9
**between** [2] - 8:24, 15:3
**bit** [2] - 5:17, 5:25
**board** [1] - 3:18
**bogus** [2] - 9:24, 10:1
**brief** [4] - 4:12, 10:20, 10:24, 16:10
**briefing** [4] - 10:22, 16:14, 16:20, 17:4
**broader** [2] - 11:7, 15:6
**burdensome** [6] - 7:19, 7:21, 9:8, 9:17, 9:21, 10:8
**Burke** [1] - 1:11
**business** [1] - 17:1
**BY** [1] - 1:15

**C**

**Cabo** [1] - 5:21
**calculus** [1] - 15:10
**case** [37] - 2:13, 2:15, 3:14, 3:17, 4:7, 4:20, 4:22, 5:3, 5:9, 5:20, 5:21, 6:3, 6:25, 7:10, 7:18, 8:9, 9:20, 9:21, 10:4, 10:6, 10:10, 10:13, 12:4, 12:12, 12:20, 13:12, 13:15, 13:17, 13:21, 14:9, 14:11, 14:13, 14:25, 15:18, 16:3, 16:19
**Case** [1] - 1:5
**cases** [4] - 9:18, 10:2, 10:12, 10:14
**caused** [2] - 11:13, 11:14
**certainly** [2] - 5:23, 13:21
**certify** [1] - 18:3
**chance** [4] - 4:12, 14:20, 14:23, 16:10
**changed** [2] - 5:24, 15:10
**Christopher** [1] - 1:11
**Circuit** [5] - 10:11, 12:7, 13:23, 14:2, 14:3
**citing** [1] - 5:21
**civil** [2] - 2:12, 9:11
**claim** [6] - 8:7, 8:10, 9:24, 10:1, 14:19, 15:8
**claims** [3] - 3:19, 13:18, 13:19
**clear** [2] - 6:19, 17:11

**client** [1] - 9:19
**close** [1] - 17:1
**Cloud** [1] - 11:15
**co** [1] - 2:23
**co-counsel** [1] - 2:23
**COHEN** [6] - 1:23, 8:18, 10:18, 11:1, 11:11, 17:15
**Cohen** [4] - 3:5, 8:18, 10:24, 12:13
**company** [1] - 2:11
**COMPANY** [1] - 1:3
**Company** [1] - 2:22
**competition** [3] - 6:17, 6:19, 6:20
**competitors** [2] - 5:23, 6:14
**complaint** [1] - 5:1
**complete** [1] - 15:15
**conceded** [1] - 10:4
**concerned** [4] - 8:21, 11:17, 11:18, 11:20
**conclude** [1] - 17:12
**conclusion** [2] - 4:7, 7:13
**condition** [1] - 11:25
**CONFERENCE** [2] - 1:8, 1:10
**considerations** [1] - 15:2
**construction** [4] - 8:7, 8:11, 9:24, 10:1
**constructions** [1] - 8:12
**context** [1] - 4:19
**continue** [3] - 5:8, 13:13, 14:18
**continuing** [3] - 14:19, 16:11, 17:18
**control** [1] - 9:5
**correct** [1] - 7:7
**CORROON** [1] - 1:15
**counsel** [15] - 1:19, 2:1, 2:17, 2:19, 2:20, 2:23, 3:1, 3:2, 3:8, 4:12, 8:17, 9:7, 9:24, 12:14, 17:12
**Counsel** [1] - 1:24
**count** [2] - 11:11, 11:21
**counterclaim** [19] - 4:3, 4:10, 6:5, 7:1, 7:19, 7:24, 8:4, 8:6, 9:25, 11:3, 11:7, 13:9, 14:16, 15:4, 15:5, 15:10, 15:11, 15:19, 16:6
**counterclaims** [1] - 14:14
**course** [1] - 7:20

**COURT** [15] - 1:1, 2:1, 2:25, 3:6, 4:18, 6:11, 7:16, 8:13, 8:16, 10:17, 10:24, 11:2, 12:13, 17:14, 17:16
**Court** [18] - 2:6, 3:13, 3:16, 4:2, 4:6, 4:8, 5:19, 7:13, 7:23, 8:1, 8:9, 12:19, 13:17, 13:20, 17:20, 18:8, 18:8
**court** [6] - 2:2, 2:13, 5:1, 12:25, 13:12, 13:15
**Court's** [4] - 7:9, 10:21, 12:16, 17:8
**covers** [1] - 17:6
**crystal** [1] - 6:19
**CSR** [1] - 18:7
**current** [2] - 3:17, 10:5
**customers** [3] - 8:24, 8:25, 11:22

**D**

**data** [4] - 9:1, 11:23, 12:1
**dates** [3] - 3:12, 15:16
**DAVID** [1] - 1:15
**David** [1] - 2:21
**deal** [1] - 11:16
**Deanna** [2] - 18:2, 18:7
**decide** [1] - 16:7
**decided** [1] - 3:13
**deciding** [1] - 8:10
**decision** [18] - 3:22, 3:24, 3:25, 4:13, 5:4, 5:7, 7:9, 10:11, 11:9, 12:15, 12:17, 12:22, 13:4, 13:13, 13:19, 14:1, 14:7, 14:21
**decisions** [1] - 14:1
**Defendant** [2] - 1:7, 1:24
**defendant** [10] - 3:4, 4:1, 4:23, 4:24, 4:25, 13:18, 13:22, 14:14, 14:17, 16:7
**defendant's** [8] - 2:14, 3:1, 3:23, 6:14, 13:8, 15:25, 17:1, 17:14
**defendants** [4] - 6:22, 8:20, 14:23, 15:12
**degree** [1] - 13:3
**DELAWARE** [1] - 1:2
**Delaware** [2] - 2:20, 3:2
**depositions** [2] - 9:11,

9:14
**described** [1] - 9:7
**devices** [1] - 8:8
**devoted** [1] - 10:23
**DI** [6] - 3:10, 3:11, 5:19, 6:2, 13:5, 14:13
**differ** [1] - 4:4
**different** [8] - 5:17, 6:1, 6:21, 7:13, 12:9, 13:4, 14:21, 15:6
**difficult** [1] - 8:25
**directly** [1] - 5:23
**disagreed** [1] - 7:14
**disagreeing** [1] - 7:10
**disappearing** [1] - 8:22
**discovery** [12] - 6:4, 6:7, 7:20, 8:20, 9:1, 9:8, 9:17, 9:20, 9:21, 15:15, 16:16
**dismiss** [9] - 4:10, 5:1, 5:8, 10:19, 10:25, 16:5, 16:15, 16:22, 17:3
**dispositive** [1] - 6:7
**dispute** [2] - 3:24, 17:9
**district** [1] - 4:25
**District** [1] - 18:8
**DISTRICT** [2] - 1:1, 1:2
**do-over** [1] - 10:6
**docket** [2] - 13:5, 15:25
**document** [2] - 9:3, 9:4
**documents** [2] - 9:3, 11:19
**done** [2] - 7:4, 10:10
**down** [1] - 10:11
**dropped** [2] - 9:19, 10:3
**drye** [1] - 2:23
**DRYE** [1] - 1:17

### E

**eagles** [1] - 2:6
**either** [2] - 10:13, 11:24
**employees** [1] - 11:18
**end** [1] - 17:20
**enter** [4] - 2:15, 3:13, 5:6, 17:2
**entry** [2] - 4:5, 15:13
**ERIC** [1] - 1:23
**Eric** [2] - 3:5, 8:18
**especially** [1] - 14:6
**ESQ** [4] - 1:15, 1:18,

1:21, 1:23
**estate** [1] - 12:8
**events** [1] - 13:6
**evidence** [1] - 8:22
**exact** [1] - 8:12
**exactly** [1] - 9:12
**example** [2] - 8:5, 13:15
**except** [3] - 6:4, 9:19, 10:3
**exception** [1] - 12:7
**exciting** [1] - 2:7
**excuse** [1] - 11:14
**experience** [1] - 10:11
**expert** [2] - 6:6, 10:5
**extend** [3] - 5:4, 5:5, 5:8

### F

**fact** [3] - 6:4, 6:15, 15:15
**factor** [1] - 13:6
**factors** [3] - 13:3, 15:2
**fading** [1] - 11:19
**fair** [3] - 7:16, 8:13, 16:9
**fan** [1] - 2:6
**fandom** [1] - 2:7
**far** [2] - 7:2, 9:19
**favor** [8] - 12:21, 13:7, 13:17, 15:7, 16:4, 16:5, 16:17, 17:4
**favorable** [3] - 3:23, 13:14, 14:7
**February** [1] - 1:12
**federal** [2] - 9:11, 9:13
**Federal** [4] - 10:10, 13:23, 14:2, 14:3
**few** [3] - 2:4, 13:1, 13:10
**file** [2] - 16:5, 16:18
**filed** [9] - 4:21, 4:23, 5:1, 9:18, 10:20, 13:16, 13:18, 16:8, 16:15
**filing** [3] - 10:2, 12:5, 17:3
**final** [2] - 3:22, 11:9
**first** [6] - 2:5, 2:19, 4:13, 6:13, 7:9, 8:19
**flip** [1] - 5:13
**FOR** [1] - 1:2
**foregoing** [1] - 18:5
**forward** [13] - 6:25, 8:1, 12:17, 12:18, 12:25, 13:9, 13:15, 13:21, 15:8, 15:11, 15:18, 16:12, 17:17

**foul** [1] - 6:15
**front** [1] - 6:20
**full** [3] - 12:20, 14:12, 16:14
**future** [1] - 14:21

### G

**generally** [1] - 7:20
**gracenote** [2] - 11:13
**grant** [1] - 14:12
**great** [3] - 13:3, 13:25, 14:17
**ground** [3] - 7:5, 8:2, 15:18
**guess** [5] - 4:18, 4:19, 5:2, 6:22, 11:2

### H

**harder** [1] - 2:8
**harm** [1] - 6:15
**hear** [2] - 2:9, 8:16
**hereby** [1] - 18:3
**history** [1] - 2:7
**hoarseness** [1] - 2:5
**hold** [1] - 5:14
**Honor** [11] - 2:21, 3:3, 4:16, 5:16, 7:7, 8:15, 8:18, 10:7, 10:16, 17:13, 17:15
**Honorable** [1] - 1:10

### I

**idea** [2] - 5:14, 13:24
**identify** [1] - 2:18
**important** [1] - 5:18
**IN** [2] - 1:1, 1:2
**Inc** [1] - 2:12
**INC** [1] - 1:6
**inclined** [1] - 16:3
**included** [1] - 14:13
**incorporate** [1] - 14:24
**increased** [2] - 9:14, 9:15
**indicate** [1] - 9:22
**indicating** [1] - 16:18
**inextricably** [1] - 7:24
**infringement** [7] - 4:21, 10:2, 10:5, 12:3, 12:6, 13:17, 14:10
**infringing** [1] - 11:16
**insight** [1] - 2:12
**INSIGHTS** [1] - 1:6
**instituted** [1] - 4:23

**interrogatories** [2] - 9:10, 9:14
**intertwined** [1] - 7:25
**invalid** [2] - 13:20, 14:12
**involved** [2] - 14:3, 14:4
**involves** [2] - 9:21, 11:21
**involving** [1] - 11:12
**IPR** [8] - 2:16, 3:18, 4:23, 4:24, 6:3, 6:8, 8:4, 13:18
**issue** [14] - 4:2, 4:9, 6:19, 10:22, 10:23, 10:25, 12:11, 12:19, 15:4, 15:7, 15:25, 16:8, 16:14
**issued** [2] - 3:22, 13:4
**issues** [2] - 7:25, 17:6
**itself** [1] - 11:7

### J

**January** [1] - 3:21
**joined** [1] - 2:23
**joint** [1] - 3:10
**jointly** [1] - 15:24
**Judge** [1] - 11:6
**judged** [1] - 12:8
**jump** [1] - 6:11

### K

**KELLER** [1] - 1:20
**Kelley** [1] - 2:23
**KELLEY** [1] - 1:17
**kind** [4] - 3:10, 5:11, 6:18, 11:8
**knowingly** [1] - 8:7

### L

**large** [1] - 11:3
**last** [1] - 2:6
**least** [4] - 10:9, 14:10, 14:11, 16:9
**letter** [7] - 3:10, 3:16, 5:19, 10:23, 11:6, 14:23, 16:18
**letters** [1] - 3:9
**level** [1] - 14:8
**license** [2] - 11:12, 11:15
**lieu** [1] - 4:9
**lift** [2] - 3:13, 12:20
**lifted** [2] - 12:23, 16:24

**lifting** [1] - 13:8
**light** [3] - 2:14, 13:9, 14:16
**likely** [1] - 9:2
**line** [3] - 2:2, 2:18, 3:5
**live** [1] - 7:11
**LLC** [2] - 1:3, 2:11
**LLP** [3] - 1:15, 1:17, 1:20
**look** [4] - 4:24, 6:13, 13:24, 17:16
**looking** [2] - 8:10
**looks** [1] - 14:12
**lost** [1] - 4:24
**lower** [1] - 14:22

### M

**maintain** [1] - 12:20
**management** [3] - 2:13, 9:3, 9:4
**matter** [3] - 2:11, 2:16, 17:18
**mean** [1] - 10:24
**memories** [1] - 11:19
**mentioned** [1] - 6:12
**middle** [3] - 7:5, 8:2, 15:18
**might** [1] - 5:14
**mini** [1] - 16:19
**mirrors** [2] - 15:24, 16:25
**mitigate** [1] - 13:7
**mitigates** [1] - 15:7
**months** [1] - 10:12
**moore** [1] - 2:22
**MOORE** [2] - 1:15, 2:21
**morning** [5] - 2:21, 2:25, 3:3, 3:6, 4:16
**most** [2] - 5:18, 9:9
**motion** [18] - 4:9, 5:1, 5:7, 6:16, 10:6, 10:19, 10:25, 13:5, 16:5, 16:8, 16:11, 16:15, 16:18, 16:22, 17:3, 17:5
**motions** [1] - 6:7
**movant** [1] - 5:5
**move** [7] - 6:25, 10:13, 12:17, 13:14, 15:11, 15:18, 16:12
**movement** [1] - 11:18
**moving** [4] - 12:18, 12:25, 13:21, 15:8
**MR** [13] - 2:21, 3:3, 4:16, 5:16, 7:7, 7:17, 8:15, 8:18, 10:18, 11:1, 11:11, 17:13,

17:15
**murky** [1] - 6:20

## N

**necessarily** [1] - 15:16
**need** [3] - 8:21, 16:13, 17:11
**needed** [1] - 14:25
**neutral** [1] - 6:25
**new** [1] - 17:4
**nice** [1] - 7:5
**NIELSEN** [1] - 1:3
**Nielsen** [10] - 2:11, 2:22, 4:17, 5:22, 7:19, 8:6, 8:24, 11:13, 11:14, 11:15
**Nielsen's** [3] - 11:12, 11:21, 11:23
**night** [2] - 2:6, 2:7
**note** [4] - 13:11, 15:1, 15:12, 16:2
**noted** [1] - 7:23
**nothing** [3] - 9:22, 12:2, 12:10
**Number** [1] - 2:12
**number** [5] - 9:10, 9:13, 9:14, 11:8

## O

**objectively** [1] - 10:2
**obviously** [2] - 11:4, 13:2
**occurred** [1] - 13:7
**OF** [2] - 1:2, 1:8
**Official** [1] - 18:8
**often** [2] - 14:2
**once** [1] - 5:3
**one** [14] - 3:19, 4:19, 6:21, 8:5, 9:19, 9:22, 10:3, 10:14, 13:11, 13:14, 14:22, 14:24, 16:18
**one-page** [1] - 16:18
**onerous** [1] - 14:5
**ongoing** [1] - 16:17
**opportunity** [1] - 10:20
**opposes** [1] - 4:5
**opposition** [1] - 2:15
**orally** [1] - 12:15
**order** [8] - 3:14, 6:18, 10:21, 12:16, 12:23, 15:23, 15:24, 17:8
**originally** [1] - 7:10
**otherwise** [2] - 5:14, 14:19

**otherwise-continuing** [1] - 14:19
**ought** [1] - 7:21
**overarching** [1] - 13:5
**own** [3] - 11:22, 12:9

## P

**P.C** [1] - 1:23
**page** [2] - 16:18, 16:20
**part** [3] - 6:24, 7:18, 10:9
**partial** [1] - 2:15
**parties** [13] - 2:8, 3:11, 3:16, 4:4, 7:8, 9:5, 9:9, 12:17, 15:23, 16:10, 16:20, 16:25, 17:17
**parties'** [3] - 3:8, 3:10, 3:11
**party** [2] - 13:14, 14:5
**pass** [2] - 14:24, 16:13
**patent** [23] - 3:18, 3:19, 3:20, 3:23, 4:3, 4:20, 4:21, 4:22, 7:24, 8:11, 9:18, 11:5, 11:9, 12:2, 12:3, 12:6, 12:11, 13:16, 13:19, 13:20, 14:10, 14:11, 15:3
**patent-in-suit** [1] - 3:19
**pause** [1] - 15:20
**payment** [1] - 11:25
**pendency** [3] - 12:24, 13:10, 16:4
**pending** [6] - 3:18, 4:7, 5:9, 10:6, 10:19, 17:2
**percent** [1] - 10:14
**percentage** [1] - 14:22
**perspective** [1] - 17:11
**place** [1] - 14:15
**Plaintiff** [2] - 1:4, 1:19
**plaintiff** [14] - 3:24, 4:5, 4:15, 4:21, 5:12, 5:13, 7:2, 12:22, 13:16, 13:21, 16:2, 16:8, 16:16, 16:18
**plaintiff's** [7] - 2:15, 2:19, 4:9, 4:14, 5:1, 5:2, 17:12
**plan** [1] - 14:25
**point** [4] - 5:18, 8:21, 11:5, 15:20
**pointed** [1] - 5:21
**points** [1] - 7:6

**position** [7] - 5:12, 5:13, 6:21, 7:8, 7:11, 10:13, 16:21
**positions** [1] - 3:11
**posture** [2] - 3:17, 4:11
**Potter** [1] - 2:22
**POTTER** [1] - 1:15
**precedent** [1] - 12:7
**preclude** [2] - 8:25, 11:22
**prejudice** [3] - 5:22, 6:9, 6:10
**prescribed** [2] - 9:11, 9:12
**present** [1] - 18:4
**presenting** [1] - 8:7
**presses** [1] - 16:22
**presumably** [1] - 8:9
**procedural** [3] - 3:17, 4:11, 17:11
**procedure** [1] - 9:12
**proceed** [1] - 13:9
**proceedings** [1] - 18:5
**professional** [1] - 12:8
**Professional** [2] - 18:2, 18:4
**prohibit** [1] - 11:24
**proposal** [4] - 6:24, 7:17, 15:25, 17:1
**proposed** [6] - 3:12, 6:2, 8:20, 9:9, 15:14, 16:25
**prosecute** [1] - 14:18
**protocols** [1] - 9:4
**prove** [1] - 10:5
**provides** [1] - 10:21
**PTAB** [8] - 3:22, 5:4, 10:12, 13:13, 14:1, 14:7, 14:16
**PTAB's** [4] - 3:25, 12:22, 13:19, 14:21

## Q

**quickly** [1] - 10:13

## R

**raise** [1] - 10:22
**read** [1] - 8:8
**real** [2] - 12:8, 15:18
**really** [6] - 6:9, 7:25, 8:2, 11:8, 14:5, 14:17
**reason** [3] - 7:15, 7:22, 14:17
**reasonable** [2] - 8:11,

15:21
**reasons** [4] - 13:1, 13:10, 14:23, 15:9
**recent** [1] - 9:9
**recess** [1] - 17:20
**recognize** [1] - 7:1
**recognized** [1] - 6:18
**record** [7] - 2:3, 2:4, 2:10, 2:18, 3:9, 9:22, 15:1
**referred** [1] - 8:1
**refusal** [1] - 11:12
**regard** [7] - 3:22, 4:2, 11:10, 12:19, 12:23, 16:6, 17:4
**regarding** [3] - 3:19, 15:2, 17:8
**Registered** [2] - 18:2, 18:3
**related** [1] - 13:2
**relates** [4] - 10:25, 12:21, 15:2, 16:22
**relating** [1] - 4:22
**relation** [2] - 4:3, 11:4
**relationship** [1] - 15:3
**remaining** [1] - 15:16
**remand** [1] - 10:15
**rendered** [1] - 4:1
**renew** [2] - 11:12, 16:9
**renewed** [1] - 17:3
**reported** [1] - 18:4
**reporter** [1] - 2:2
**Reporter** [3] - 18:3, 18:4, 18:8
**reports** [1] - 10:5
**request** [2] - 2:14, 16:9
**requested** [1] - 17:3
**resolved** [2] - 8:4, 15:17
**resolving** [1] - 4:9
**respect** [1] - 15:19
**responses** [1] - 7:6
**retain** [1] - 4:6
**reversal** [1] - 10:15
**reversed** [4] - 4:20, 5:10, 7:8, 13:12
**reviewed** [1] - 3:8
**revised** [1] - 3:12
**revisit** [1] - 8:12
**RIMON** [1] - 1:23
**roles** [3] - 4:20, 5:10, 13:12
**RPR** [1] - 18:7
**rule** [1] - 12:8
**rules** [1] - 9:13
**run** [1] - 7:3
**Russell** [1] - 3:4
**RUSSELL** [2] - 1:21,

3:3

## S

**scenario** [3] - 13:16, 13:22, 14:7
**schedule** [17] - 2:15, 3:12, 4:2, 4:6, 4:9, 5:7, 6:1, 7:3, 8:19, 9:9, 15:13, 15:14, 16:20, 16:25, 17:2, 17:4, 17:17
**scheduling** [3] - 3:14, 10:21, 15:24
**second** [1] - 6:23
**see** [2] - 7:4, 15:20
**seek** [1] - 16:16
**seeking** [2] - 5:20, 13:14
**sense** [1] - 8:1
**sentences** [1] - 10:23
**separate** [1] - 12:2
**serial** [1] - 12:5
**serve** [3] - 12:16, 12:24, 17:7
**set** [4] - 3:10, 15:16, 16:19, 17:4
**SHAW** [1] - 1:20
**shorthand** [1] - 18:5
**side** [9] - 2:18, 2:19, 3:1, 3:23, 4:14, 5:2, 8:17, 15:21, 17:14
**sides** [1] - 2:2
**sign** [1] - 16:1
**simplification** [1] - 13:6
**situation** [1] - 5:17
**software** [1] - 11:15
**somewhat** [1] - 7:8
**sort** [4] - 7:17, 12:1, 12:7, 12:9
**sought** [1] - 15:13
**speaking** [1] - 4:14
**specifically** [3] - 16:10, 16:21, 16:23
**sports** [1] - 2:7
**stage** [1] - 6:17
**stand** [2] - 16:11, 17:20
**standard** [1] - 12:10
**start** [1] - 2:19
**started** [1] - 16:17
**STATES** [1] - 1:1
**status** [1] - 2:13
**STATUS** [2] - 1:8, 1:10
**stay** [29] - 3:13, 4:6, 5:5, 5:6, 5:20, 5:21, 6:8, 6:16, 7:10, 10:19, 10:25, 12:20,

12:21, 12:23, 13:2, 13:5, 13:8, 13:25, 14:5, 14:10, 14:12, 15:2, 16:3, 16:16, 16:24, 17:3
**stay-related** [1] - 13:2
**stayed** [2] - 3:18, 13:17
**staying** [1] - 6:3
**stays** [1] - 13:13
**Stenotype** [1] - 18:5
**Steve** [1] - 2:23
**Steven** [1] - 4:17
**STEVEN** [1] - 1:18
**still** [2] - 7:12, 16:16
**stop** [1] - 16:22
**strategies** [1] - 9:4
**stuck** [1] - 6:25
**stuff** [1] - 11:19
**submit** [2] - 15:24, 16:25
**submitted** [2] - 3:11, 6:2
**substance** [2] - 12:16, 17:8
**sued** [1] - 11:16
**suggested** [2] - 6:3, 6:8
**suit** [3] - 3:19, 13:17, 14:11
**suits** [1] - 12:6
**systems** [1] - 8:8

## T

**teleconference** [4] - 1:11, 2:14, 17:7, 17:19
**terms** [4] - 6:6, 6:9, 7:17, 13:6
**THE** [17] - 1:1, 1:2, 1:3, 2:1, 2:25, 3:6, 4:18, 6:11, 7:16, 8:13, 8:16, 10:17, 10:24, 11:2, 12:13, 17:14, 17:16
**themselves** [1] - 2:18
**therefore** [1] - 7:25
**they've** [3] - 10:3, 10:4, 15:14
**Third** [1] - 12:6
**third** [2] - 9:4, 12:5
**three** [1] - 13:2
**today** [2] - 17:7, 17:12
**tomorrow** [1] - 17:2
**took** [1] - 6:21
**touch** [1] - 11:8
**traditional** [1] - 13:16
**TRANSCRIPT** [1] - 1:8

**transcript** [2] - 12:15, 17:7
**trial** [5] - 3:18, 6:7, 7:3, 8:3, 15:14
**true** [3] - 7:12, 15:5
**try** [3] - 4:13, 12:14, 12:17
**turn** [1] - 4:13
**turned** [1] - 11:16
**TVision** [10] - 2:11, 3:4, 5:19, 5:20, 5:23, 6:1, 6:10, 7:8, 9:17, 11:14
**TVISION** [1] - 1:6
**TVision's** [5] - 8:17, 9:1, 11:12, 11:22, 12:1
**two** [3] - 6:12, 10:23, 16:20
**type** [1] - 6:18
**typical** [1] - 5:17
**typically** [3] - 5:3, 5:4, 13:13

## U

**U.S** [2] - 2:11, 18:8
**U.S.M.J** [1] - 1:11
**under** [1] - 10:21
**undergo** [1] - 9:18
**undue** [2] - 5:22, 6:10
**unfavorable** [1] - 5:5
**UNITED** [1] - 1:1
**unreasonable** [1] - 8:7
**up** [2] - 5:15, 17:11
**upheld** [1] - 14:2
**urging** [1] - 7:13
**US** [1] - 1:3

## V

**validity** [4] - 11:9, 12:3, 12:11, 15:4
**various** [2] - 9:4, 15:5
**versus** [1] - 2:11
**via** [1] - 1:11
**viable** [1] - 14:19
**view** [1] - 6:14
**vis** [4] - 11:5, 15:10
**vis-a-vis** [2] - 11:5, 15:10
**visit** [1] - 10:15
**voice** [1] - 2:6
**vs** [1] - 1:5

## W

**wait** [5] - 9:2, 14:6,

14:14, 14:18
**waiting** [2] - 5:6, 5:7
**warner** [1] - 18:2
**Warner** [1] - 18:7
**Warren** [1] - 2:24
**WARREN** [1] - 1:17
**week** [1] - 17:19
**wish** [3] - 4:12, 8:14, 17:18
**wishes** [2] - 16:8, 16:16
**writ** [1] - 11:3
**written** [1] - 3:22

## Y

**year** [1] - 3:21
**Yovits** [4] - 2:23, 4:17, 4:18, 8:14
**YOVITS** [7] - 1:18, 4:16, 5:16, 7:7, 7:17, 8:15, 17:13